[L. A. No. 5795. In Bank.—February 26, 1919.]

CITY OF LONG BEACH (a Municipal Corporation), Petitioner, v. W. T. LISENBY, Mayor, etc., et al., Defendants.

[1] MUNICIPAL CORPORATIONS—LIMITATION UPON INCURRING INDEBTEDNESS — CONSTITUTIONAL PROVISION — INAPPLICABILITY TO LIABILITIES ARISING OUT OF TORTS.—Section 18 of article XI of the constitution, providing no city shall incur any indebtedness or liability in any manner or. for any purpose exceeding in any year the income or revenue provided for such year without the assent of two-thirds of the qualified voters thereof, voting at an election to be held for that purpose, is confined in its application to those forms of indebtedness and liability which may have been created by the voluntary action of the officials in charge of the affairs of the city, and has no application to cases of indebtedness or liability imposed by law or arising out of tort.

[2] ID.—"FUND" AND "REFUND" DEFINED.—To "fund" an outstanding debt of a municipal corporation which. is payable presently or at short periods is to convert such indebtedness into a more permanent form with an extended time of payment and with interest which is regular and which also may be reduced, and the usual method of "funding" such a debt is by the issuance of bonds. To "refund" is to replace that which has once been funded by a new fund.

[3] ID.—APPLICABILITY OF TERMS TO STATUTES.—The term "fund" as used in statutes authorizing the funding or refunding of the outstanding. indebtedness of municipalities by the issuance of bonds should be given application to those forms of municipal indebtedness referred to therein as evidenced by "warrants," and the term "refund" to those forms of such indebtedness as had already once or oftener been funded by being put into the form of bonds.

[4] ID.—JUDGMENT AGAINST CITY FOR PERSONAL INJURIES—ISSUANCE OF REFUNDING BOND — RIGHT OF CITY UNDER ACT OF 1897 AS AMENDED IN 1901.—Section 1 of the act of 1897 (Stats. 1897,

p. 75), as amended in 1901, authorizing any incorporated city or town, other than cities of the first class, having an outstanding indebtedness, evidenced by bonds or warrants thereof, to fund or refund the same and issue bonds therefor, is available by such a city for the purpose of providing a means for the funding and eventual payment of a judgment obtained against the city for damages for personal injuries, and for which a warrant has been issued to the judgment creditor.

[5] ID.—PAYMENT OF JUDGMENTS AGAINST MUNICIPALITIES — LEVY OF TAX—ACT OF 1901—ACT OF 1897 NOT REPEALED.—The act of 1897 was not repealed expressly or by implication by the act of 1901 (Stats. 1901, p. 794), providing for the payment of judgments against cities and towns by the levying of a tax.

[6] ID.—LIABILITY INCURRED IN EXERCISE OF PROPRIETARY FUNCTION OF MUNICIPALITY—FUNDING OF INDEBTEDNESS NOT PREVENTED.—The fact that the indebtedness which it is sought to have funded in the form of bonds payable by general taxation was in its inception a liability arising out of the exercise of the proprietary as distinguished from the governmental functions of the municipality does not prevent the funding of the indebtedness in such manner.

PROCEEDING in Mandate originally instituted in the Supreme Court to compel a city treasurer to sign and issue a bond providing for the payment of a municipal indebtedness. Writ granted.

The facts are stated in the opinion of the court.

Wheaton A. Gray, Waldo M. York, Harry M. Irwin, Geo. L. Hoodenpyl and D. L. Bathurst for Petitioner.

Eugene E. Tincher for Defendants.

K. A. Miller, Barstow, Rohe & Jeffers, Nathan Newby, T. E. Gibbon, T. A. Williams, W. C. Shelton, Harry A. Hollzer, Slosson & Mitchell, W. A. Alderson, and Beverly L. Hodgehead, *Amici Curiae,* for Petitioner.

T. A. Sherwood, James E. Kelby, and Parke Godwin, *Amici Curiae,* for Defendant.

THE COURT.—This is a proceeding in which the petitioner seeks a writ of mandate requiring the defendants, as its officials charged with a duty so to do, to execute a certain bond

for the sum of $563.23, issued under the provisions of a certain ordinance of the petitioner authorizing the issuance of such bond for the purpose of funding and thereby providing for the eventual payment of an outstanding indebtedness in the form of a judgment against the petitioner, evidenced by a warrant issued to the judgment creditor for said sum. The facts of the case are undisputed and may be briefly stated as follows:

The city of Long Beach is a municipal corporation operating under a charter duly adopted by its people and approved by the legislature in the year 1915. Prior to said time, and acting under the permission of an act of the legislature adopted in the year 1903 (Stats. 1903, p. 412), authorizing municipalities to issue bonds and incur indebtedness for the purpose of constructing and maintaining public assembly or convention halls, the city of Long Beach had proceeded to erect and conduct an auditorium for the purposes of public assemblage. When such auditorium was about to be used for such a purpose, and while a large number of people were assembled in front thereof, the approach to the building collapsed and many persons were killed or injured. Actions were brought against said city for damages resulting from the death or injury of these people, based upon the alleged negligence of the said municipality in the construction of said building, some of which resulted in judgments in favor of the several plaintiffs therein. One of these cases affirmed upon appeal to this court was that of *Chafor* v. *City of Long Beach,* 174 Cal. 478, [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670], and upon the affirmance of this judgment other judgments based upon the authority thereof were obtained against said city. In all, these judgments aggregated the sum of over three hundred and seventy thousand dollars, a sum much in excess of the income and revenue of said city provided for any single year. M. A. Poll was one of those persons in whose favor one of said judgments had been entered, and said judgment not having been satisfied, he applied to and received from said city a warrant for the payment of the sum of $563.23, the amount of said judgment, dated March 13, 1918. Thereafter and on March 15, 1918, the governing body of said city, who are termed the commissioners thereof, by a two-thirds vote of its members, adopted an ordinance entitled "An ordinance providing for the issuance of a bond in the

sum of $563.23 to refund outstanding indebtedness of the city of Long Beach in the sum of $563.23, evidenced by a warrant of said city.'' It is the bond which was to be issued pursuant to this ordinance which the defendants herein as mayor and treasurer of said city refused to sign, and it is their signature of the same which it is the purpose of the writ sought herein to compel. The act of the legislature under the terms of which the petitioner seeks to justify attempted issuance of the bond in question by a two-thirds vote of the governing body of said city is the act of 1897 (Stats. 1897, p. 75), which reads in part as follows:

''Section 1. The Common Council, Board of Trustees, or other governing body of any incorporated city or town other than cities of the first class, in this State, having an outstanding indebtedness, evidenced by bonds or warrants thereof, is empowered, by a two-thirds vote of its number, to fund or refund the same and issue bonds of such city or town therefor in sums of not less than one hundred dollars nor more than one thousand dollars each, and having not more than forty years to run, and bearing a rate of interest not exceeding six per cent per annum, payable semi-annually.'' It may be here noted that the foregoing section of the act of 1897 was amended in 1901, (Stats. 1901, p. 274), in an important particular to be hereinafter discussed.

The first contention of the defendants herein in opposition to the issuance of said writ is that the payment of said indebtedness in the manner provided by the terms of the statute above quoted or of any amendment thereto is inhibited by the provisions of section 18 of article XI of the state constitution, reading as follows: ''No county, city . . . shall *incur* any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified voters thereof, voting at an election to be held for that purpose. . . . ''

It being conceded that the indebtedness or liability evidenced by said warrant is part of a total indebtedness or liability arising from a common cause which exceeded in the year of its creation the income or revenue of said city provided for such year, the first question presented for our consideration is that of the scope, application, and effect of the provisions of the state constitution last above quoted. The purpose for which the foregoing section of the state constitution was

adopted is somewhat outlined in the debates of the constitutional convention of 1879, to which our attention has been directed, from which it appears that the framers of this particular section of the constitution stated its object to be to put an end to ''the practice prevalent both in California and in the eastern states, a practice that has grown rapidly of late years, of extravagance and expenditure in engaging in improvements of various kinds which has resulted in an enormous increase of municipal indebtedness.'' A yet more definite expression of the purpose of this provision of the constitution is to be found in the decision of this court in the case of *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641, wherein it is stated : ''The system previously prevailing in some of the municipalities of the state by which liabilities and indebtedness were incurred by them far in excess of their income and revenue for the year in which the same were contracted, thus creating a floating indebtedness which had to be paid out of the income and revenue of future years, and which, in turn, necessitated the carrying forward of other indebtedness, was a fruitful source of municipal extravagance. The evil consequences of that system had been felt by the people at home and witnessed elsewhere. It was to put a stop to all of that, that the constitutional provision in question was adopted.'' The subject was further considered in the case of *McBean* v. *City of Fresno,* 112 Cal. 159, [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358], and *Arthur* v. *City of Petaluma,* 175 Cal. 216, [165 Pac. 698], wherein the language of the foregoing case was expressly referred to and approved.

Having thus determined the general scope and purpose of the constitutional provision under review, we may next consider the limitations imposed upon its application by our previous decisions. In the case of *Lewis* v. *Widber,* 99 Cal. 412, [33 Pac. 1128], this court decided that the payment of the salary of a public officer (in that case the treasurer of the city and county of San Francisco), whose office has been created and salary fixed by the legislature of the state, is not within the prohibition of section 18 of article XI of the constitution. In so deciding, this court, after quoting the foregoing language of the constitution, said: ''It is quite apparent, however, that this clause of the constitution refers only to an indebtedness or liability which one of the municipal bodies mentioned has itself incurred—that is, an indebtedness which

the municipality has contracted, or a liability resulting, in whole or in part, from some act or conduct of such municipality. Such is the plain meaning of the language used. The clear intent expressed in the said clause was to limit and restrict the power of the municipality as to any indebtedness or liability which it has discretion to incur or not, to incur. But the stated salary of a public officer fixed by statute is a matter over which the municipality has no control, and with respect to which it has no discretion; and the payment of his salary is a liability established by the legislature at the date of the creation of the office. It, therefore, is not an indebtedness or liability incurred by the municipality within the meaning of said clause of the constitution." [1] The reasoning of the foregoing decision, as well as that of the other cases above cited dealing generally with the scope and purposes of this constitutional provision, would clearly seem to confine the application of said provision to those forms of indebtedness and liability which may have been created by the voluntary action of the officials in charge of the affairs of such city and to have no application to cases of indebtedness or liability imposed by law or arising out of tort. As to the latter class of liabilities to which the indebtedness existing in the instant case belongs, viz., that arising out of tort, there is no direct adjudication in this state. The constitutions and statutes of several of the other states of our Union contain similar provisions to that embraced in the foregoing clause of our own constitution, and in construing these it has been uniformly held by the courts of these states that said limitations do not apply to liabilities arising out of torts. (*Conner* v. *City of Nevada,* 188 Mo. 148, [107 Am. St. Rep. 314, 86 S. W. 256]; *City of Bloomington* v. *Peurdue,* 99 Ill. 329; *Rice* v. *City of Des Moines,* 40 Iowa, 638; *City of Chicago* v. *Sexton,* 115 Ill. 230, [2 N. E. 263]; *Fort Dodge etc. Co.* v. *City of Fort Dodge,* 115 Iowa, 568, [89 N. W. 7]; *Lorence* v. *Bean,* 18 Wash. 36, [50 Pac. 582]; *People etc.* v. *May,* 9 Colo. 404, [12 Pac. 838]; *O'Bryan* v. *Owensboro,* 113 Ky. 680, [68 S. W. 858, 69 S. W. 800]; *Little* v. *Portland,* 26 Or. 235, [37 Pac. 911].) In McQuillin on Municipal Corporations it is stated to be the well-settled rule that such provisions in the constitutions and statutes of the various states apply only to indebtedness which arises *ex contractu* and have no application to involuntary liabilities arising *ex delicto.* We are, therefore, constrained

to hold that the section of the constitution above quoted may not be relied upon to defeat the asserted right of the city of Long Beach to provide for the payment of its indebtedness of which the judgment sought to be funded through this proceeding forms a part, without regard to the state of its revenues for the year in which such liability arose and without a vote of the people of said city.

The question still remains, however, whether the provisions of the act of 1897 above quoted, or of the later amendment thereto, furnish the proper legal authority for the attempted action of the governing body of said city in its endeavor to provide a means for the ultimate payment of said indebtedness. This leads us to a closer consideration of the terms of the act of 1897 and of the amendment thereto adopted in the year 1901. The act of 1897 in its original form was one of a series of similar acts authorizing the funding or refunding of the outstanding indebtedness of municipalities by the issuance of bonds. The first of these acts was passed in the year 1880 and had reference only to the indebtedness of municipalities outstanding on and prior to January 1, 1880, which might be funded in the form of bonds by a two-thirds vote of the members of the governing body. The next enactment touching the subject was the act of 1883 applicable to all cities and towns of the state except cities of the first class. This act provided for the funding or refunding of the outstanding indebtedness of such cities or towns evidenced by bonds or warrants thereof by a four-fifths vote of the members of the governing body thereof. The next act was that of 1893, which amended the act of 1883, adding the important requirement that the question of the issuance of the funding or refunding bonds should be submitted to a vote of the electors. The act of 1895 again amended the act of 1883 by omitting the word "warrants" and also the requirement of its immediate predecessor for submitting the matter of the issuance of such bonds to the vote of the electors, but limiting the outstanding indebtedness which might be funded or refunded to the principal of the bonds. Then came the act of 1897, which went back as to its language to the form substantially of the act of 1883. Had the legislation of the state been permitted to remain in the form into which it was crystallized in the act of 1897, it cannot be fairly disputed that it was the intention of the legislature to enable towns and cities to fund or refund

every form of their indebtedness by the issuance of bonds therefor through a vote of two-thirds of their governing body. This, of course, they could not do as to such of their contractual obligations as would come within the inhibition of section 18 of article XI of the state constitution; but as to such forms of indebtedness as arose by operation of law, such as official salaries fixed by state law and the like or as had arisen *ex delicto* and been put in the form of judgments and evidenced by either bonds or warrants, there would seem to be no constitutional objection to the method provided in said act of 1897 for funding or refunding these latter forms of indebtedness. This view of the scope of these several successive acts is further enforced by the meaning to be given to the use of the phrase "fund or refund" found in each of them. [2] To "fund" an outstanding debt of a municipal corporation which is payable presently or at short periods is to convert such indebtedness into a more permanent form with an extended time of payment and with interest which is regular and which may also be reduced. The usual method of "funding" such a debt is by the issuance of bonds. (*People* v. *Carpenter,* 31 App. Div. 603, [52 N. Y. Supp. 781]; *Ketchum* v. *City of Buffalo,* 14 N. Y. 356; Webster's New International Dictionary, subject "Fund"; Bouvier's Law Dictionary, subject "Fund.") To "refund" is to replace that which has once been funded by a new fund. (Webster's New International Dictionary, subject "Refund.") [3] Applying these definitions to these several statutes it would seem that the term "fund" should be given application to those forms of municipal indebtedness referred to therein as evidenced by "warrants," and the term "refund" to those forms of such indebtedness as had already once or oftener been funded by being put into the form of bonds. Our attention has, however, been called to the fact that two important changes were made in the law relating to the indebtedness of municipalities by the legislature in the year 1901. The first of these consisted in an amendment to the act of 1897, by which the words "or by judgment or judgments recovered against it upon bonds or warrants originally issued by such town or city" were inserted in said act making the portion of said act important to this inquiry read as follows:

"Section 1. The common council, board of trustees, or other governing body of any incorporated city or town other

than cities of the first class in this state, having an outstanding indebtedness evidenced by bonds or warrants thereof, *or by judgment or judgments recovered against it upon bonds or warrants originally issued by such town or city,* is empowered, by a two-thirds vote of its number, to fund or refund the said indebtedness and issue bonds of such city or town therefor in sums of not less than one hundred dollars nor more than one thousand dollars each and having not more than forty years to run and bearing a rate of interest not exceeding six per cent per annum payable semi-annually.'' (Stats. 1901, p. 274.)

It is the contention of the respondents herein that as to the above-quoted amendment inserted in the act of 1897, this amendment is to be construed as a limitation upon the powers of the governing bodies of such towns or cities as are embraced in the act confining the issuance of bonds for the funding or refunding of judgments to such judgments only as had been recovered against the town or city upon bonds or warrants previously issued by such town or city; and hence that the judgment in the instant case, not being of that character, was not susceptible of being funded under the terms of the amended act. We cannot adopt this contention. [4] We think the purpose of the amendment to this act made in 1901 was to enlarge rather than to limit its application, and was to so enlarge it as to render it applicable to cases wherein the holders of warrants or bonds against such municipalities who had put these into the form of judgments might also have these judgments funded or refunded in the same manner as they might have had funded or refunded the indebtedness in its original form. Any other construction would leave the term ''warrants'' without meaning or place in the act. It is to be noted in this connection that the matter of funding or refunding so much of the indebtedness of a municipality as may come within the scope of these acts is a matter which is reposed in the discretion of the governing body of the municipality, and is not a right to such action which holders of the warrants, bonds, or judgments evidencing such indebtedness can either invoke or compel. It rests entirely with the governing body of the town or city to determine whether or not an outstanding indebtedness which is presently due or is soon to become due, or which is bearing a high rate of interest, shall be converted into long term bonds at reduced interest, payable as to both principal and interest in annual or periodi-

cal installments.   It may not be denied that in many instances
of outstanding municipal obligations, possibly even in the
instant case, this would be both the desirable and prudential
course to pursue.   The statute of 1897, as amended in 1901,
in our view permits municipalities of the kind covered by its
terms to fund or refund their outstanding indebtedness evi-
denced by their issued warrants or bonds or by judgments
obtained thereon when such indebtedness is not of the sort
inhibited by the state constitution, and that they may do so
by the action of two-thirds of their governing body as pro-
vided in said amended act; and that the indebtedness due the
creditor of the petitioners in the instant case, evidenced as it
is by a duly issued warrant, may be thus funded; and that the
petition herein having by the due and regular action of its
governing body adopted an ordinance to that effect it is now
entitled to have its ministerial officers, the respondents herein,
perform the ministerial act of affixing their official signatures
to the bond to be issued pursuant to said ordinance.

In reaching this conclusion we are not unmindful of the
second contention of the respondents herein that the act of
1897, as amended in 1901 by the act making such amendment
approved March 12, 1901, was repealed by the act entitled
"An act to provide for the payment of judgments against
counties, cities, cities and counties, and towns," approved
March 23, 1901.   (Stats. 1901, p. 794.)   This later act does
not purport expressly to repeal any former enactment touch-
ing the indebtedness of municipalities.   It provides in sub-
stance that it shall be the duty of the county clerk to file with
the auditor and furnish to the governing bodies of the local
municipality affected by the act a list of such existing final
judgments against each as are of record in his office fifteen
days before the day on which the tax levy must by law be
made.   It is then made the duty of the governing body of the
municipality affected by such judgment having authority to
levy taxes upon its taxable property to include in the tax levy
a rate or sum sufficient to pay such judgment or such aliquot
portion thereof as during a series of like successive levies cov-
ering a period of not to exceed ten years would eventually
pay the whole of such judgment.   [5]   This act does not pur-
port to expressly repeal the former act nor do we think it
does so by implication.   It is to be noted that the former act
excepts from its operation cities of the first class and that it

has no reference to the indebtedness of counties, while the second is general in its application to counties, cities and counties, and cities and towns of every class. The chief distinction between these two acts, however, is this: The former act and all of its predecessors touching the same subject are, as we have seen, acts purporting to provide a means by which cities and towns excepting those of the first class may, through the discretionary action of their governing bodies, elect to fund or refund their outstanding indebtedness in the form of long term bonds. This method of gradually relieving such municipalities of a burden of debt presently due cannot be compelled by the creditor, but rests entirely in the voluntary action of two-thirds of the membership of the governing body. The later act, on the other hand, is compulsory in its nature. It imposes upon the official body invested with the power to levy taxes the duty of making a special tax levy to pay judgments against the municipality, the performance of which duty the judgment creditor could compel by an appropriate writ. These two provisions for the payment of outstanding judgments against the municipalities respectively affected thereby are thus not inconsistent or in conflict with each other, the former providing a means by which the municipality may in its discretion adopt a method for funding or refunding such portion of its indebtedness as may thus be paid; the latter prescribing a means by which the creditor may compel the payment of his judgment by an enforced levy of taxes. These acts are thus in effect complementary in providing a twofold means by which municipalities may elect, or if they do not do so, may be compelled to pay such of their debts as are payable out of revenues other than those of the year in which the obligation was incurred.

[6] As to the respondents' contention that the indebtedness which it is herein sought to have funded in the form of bonds payable by general taxation was in its inception a liability arising out of the exercise of the proprietary as distinguished from the governmental functions of the municipality, and hence cannot be made payable out of funds derived from general taxation, we do not deem the point deserving of extended consideration. It has long been the settled policy in this state to permit municipalities to issue bonds for the purpose of creating and carrying on public activities which are proprietary in character; such bonds being made payable out

of funds derived from general taxation. No distinction can be drawn between obligations thus created and payable and obligations in the nature of liabilities arising *ex delicto* out of the operation of the public properties thus called into being. In the instant case the creditor has secured a general judgment against the petitioner herein payable generally out of whatever funds or property of the city may be available and upon which a warrant has been duly issued also payable out of the general funds of the municipality. We are satisfied that the statute of 1897, as amended in 1901, is available for the purpose of providing a means for the funding and eventual payment of this indebtedness, and hence that the petitioner is entitled to the issuance of a writ of mandate commanding the respondent, its officials, to sign and issue the bond in question.

Let the writ issue accordingly.

Richards, J., *pro tem.*, Shaw, J., Melvin, J., Sloss, J., Wilbur, J., Lennon, J., and Angellotti, C. J., concurred.