[Civ. No. 2973. First Appellate District, Division One.—June 19, 1919.]

METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Petitioner, v. CORNELIUS J. DEASY et al., Respondents.

[1] MUNICIPAL CORPORATIONS—SAN FRANCISCO—ANNUAL BUDGET—EXPENDITURES TO BE INCLUDED.—The provisions of sections 1 to 5, chapter 1, article III, of the charter of the city and county of San Francisco that the board of supervisors must prior to the first Monday of June in each year make "a budget of the amounts estimated to be required to pay the expenses of conducting the public business of the city and county for the next ensuing fiscal year," refer to those expenditures of the several departments of the municipality which are yet to be made in the course of their current operation, and which require the process of estimation in order to determine the probable cost of conducting the municipality as a going concern, and not to liabilities which do not require estimation and which cannot in their nature be affected by the fact that they are or are not included in the budget of the fiscal year.

[2] ID.—JUDGMENTS FOR TORTS—APPLICATION OF SECTION 18 OF ARTICLE XI OF CONSTITUTION.—Judgments obtained against municipalities for torts constitute liabilities which are not within the contemplation, purpose or meaning of section 18 of article XI of the state constitution.

[3] ID.—LIMITATION OF INDEBTEDNESS—CONSTITUTIONALITY OF ACT OF 1901. The act of March 23, 1901 (Stats. 1901, p. 794), providing for the payment of judgments against counties, cities, cities and counties and towns, is not unconstitutional, as being in contravention of section 18 of article XI of the constitution, in so far as it relates to final judgments against municipalities which are not of the class coming within the prohibitive terms of said article and section of the constitution.

[4] ID.—CHARTER PROVISIONS—CONFLICT.—The provisions of the act of March 23, 1901 (Stats. 1901, p. 794), providing for the payment of judgments against counties, cities, cities and counties and towns, are not in conflict with the provisions of the charter of the city and county of San Francisco relating to the liquidation of judgments out of the surplus fund; nor are they in conflict with the provisions of the charter relating to the auditing and payment of demands against the treasury.

PROCEEDING in Mandamus to compel the inclusion within a municipal budget of the amount due upon a judg-

ment for a tort, and to compel the levy of a tax for the payment of the same. Writ issued.

The facts are stated in the opinion of the court.

Samuel Knight and F. Eldred Boland for Petitioner.

George Lull, City Attorney, Maurice T. Dooling, Jr., Assistant City Attorney, for Respondents.

RICHARDS, J.—Application for a writ of mandate directed to the auditor of the city and county of San Francisco and also to the persons constituting the board of supervisors of said city and county and to the mayor thereof, by the terms of which writ the said auditor shall be commanded to certify to the treasurer of said city and county the fact and amount of a certain judgment for the sum of $29,808.94, and interest and costs, obtained by the petitioner herein against said municipality and remaining unpaid; and by the terms of which writ the said mayor and board of supervisors shall be required to include within the budget of estimated expenses and required finances of said municipality for the ensuing year the amount due upon said judgment, and to levy a tax for the payment of the same, as required by law.

The respondents have appeared to oppose the issuance of said writ upon several grounds to be hereinafter considered.

The facts upon which the petitioner predicates its demand for the issuance of said writ of mandate are undisputed and are briefly these: On the first day of December, 1917, the petitioner herein recovered a judgment against the said city and county of San Francisco for the sum of $29,808.94, together with costs amounting to $112, in an action instituted by it against said municipality for damages arising out of certain alleged injuries to its land and the buildings thereon, occasioned by and during the excavation of a certain tunnel under and along the line of Stockton Street, therein, the said petitioner not being a party to the proceedings for the construction of such tunnel. This judgment has since the rendition thereof remained unpaid and was at the time of the application for this writ, and still

is, an existing and unsatisfied judgment in favor of said petitioner and against said municipality. The demands of the petitioner upon the several officials of said city and county named as respondents herein for the taking of the steps alleged by it to be necessary to the levy of a special tax for the liquidation of such judgment have been refused whereupon it seeks this writ.

The respondents interpose several obstacles to the issuance of the writ. [1] The first of these, standing upon the threshold, is that the application for the writ comes too late for action on the part of the municipal officials during the current year, for the reason that under the provisions of the San Francisco charter (secs. 1 to 5, c. 1, art. III thereof) the board of supervisors must prior to the first Monday of June in each year make "a budget of the amounts estimated to be required to pay the expenses of conducting the public business of the city and county for the next ensuing fiscal year"; that the time has gone by for the inclusion of the amount of the petitioner's judgment in such budget, and hence that by the express terms of section 5 of said chapter and article of said charter its amount cannot be embraced in the tax levy which, under another section of said charter, is to be made on or before the third Monday of September of each year.

We do not think this objection a valid one against the issuance of this writ. The budget provided for by the provisions of the charter above referred to was evidently not intended to apply to or embrace those obligations of the municipality which are of the nature of stated obligations or liabilities by reason of being either established by law or of being fixed in the form of final judgments. By the very terms of the section providing for said budget the matters to be included therein are the "estimated expenses of conducting the public business of the city and county for the next ensuing fiscal year." Clearly, this refers to those expenditures of the several departments of the municipality which are yet to be made in the course of their current operation and which require the process of estimation in order to determine the probable cost of conducting the business of the municipality as a going concern. It has no reference to liabilities which do not require estimation and which could not in their nature be affected

by the fact that they were or were not included in the budget of the fiscal year. For example, the municipality could not evade its liability to pay the stated salaries of its officials by failing to include these in its budget, or even by failing to embrace them in its tax levy. (*Lewes* v. *Widber,* 99 Cal. 412, [33 Pac. 1128].) The same reasoning applies to those liabilities of the municipality which have ripened into final judgments and which are not otherwise of a nature which would bring them within the prohibition of section 18 of article XI of the state constitution as to the fund available for their payment.

[2] This brings us to the next contention of the respondents, which is that the judgment upon which petitioner bases its demand for the issuance of the writ of mandate herein is one which comes within the prohibition of the above section and article of the state constitution. This contention was, however, disposed of by the supreme court in the recent case of *City of Long Beach* v. *Lisenby,* 180 Cal. 52, [179 Pac. 198], wherein it was held that judgments obtained against municipalities for torts constituted liabilities which were not within the contemplation, purpose, or meaning of section 18 of article XI of the state constitution.

Having disposed of these two contentions we approach the main obstacle which the respondents urge against the issuance of this writ, which is, in substance, that in the matter of the payment of whatever judgments may be obtained against the city and county of San Francisco its charter has provided a means for their liquidation which is exclusive, and that the petitioner herein, not being able by proper averment or proof to show that the means thus provided is available for the satisfaction of its judgment, it has no other present remedy. In support of this contention we are directed to the provisions of sections 1, 2, and 3 of chapter 11 of article III of the San Francisco charter, which provide for the apportionment of the revenues of the municipality into separate funds, which are to be drawn upon for the payment of its various sorts of liabilities. Among these is the "Surplus Fund," which shall consist of the moneys remaining at the end of any fiscal year in any other of these funds after all valid demands against said other funds incurred within the fiscal year have been paid

and discharged. Section 3 of said article and chapter then provides as follows:

"The surplus fund shall be used for the purposes and in the order following:

"1. In the payment of any final judgment against the city and county.

"2. In liquidation and extinguishment under such regulations as the supervisors may adopt of any outstanding funded debt of the city and county;

"3. To be carried over and apportioned among the funds and used in the ensuing fiscal year as part of the income and revenue thereof."

It appears from the record herein that there are and have been since the rendition of the petitioner's judgment herein no moneys in the surplus fund of the city and county of San Francisco; and this being so, the respondents claim that the petitioner has by law no other means by which its judgment can be paid.

In answer to this contention the petitioner falls back upon the provisions of an act of the legislature approved March 23, 1901, entitled, "An act to provide for the payment of judgments against counties, cities, cities and counties and towns." (Stats. 1901, p. 794.) Said act provides that all final judgments then existing or thereafter obtained against any of the enumerated municipalities shall be paid by the treasurer thereof in the following manner: The clerk thereof shall file with the auditor and furnish the board of supervisors or other governing body of such municipality authorized by law to levy taxes a complete list of all final judgments against such municipality of record in his office at least fifteen days before the day on which the tax levy must by law be made; the auditor shall examine and audit the judgments so reported by the clerk, and certify the amount of the same to the treasurer within five days after the list of such judgments has been filed by the clerk with him, and thereupon the board of supervisors or other governing body of the municipality authorized by law to levy taxes must include in the tax levy for the next fiscal year a rate or sum sufficient to pay such final judgments as are thus found to exist against the said municipality. The act permits the tax-levying body to spread the payment of such judgments over a series of years, not exceeding

ten, by providing for an aliquot or fractional part of the amounts due upon such judgments to be levied, collected, and paid thereon each year for that period of time. It is upon the provisions of this statute that the petitioner herein places its main reliance for its right to the writ, and has framed its application herein accordingly.

[3] The respondents, on the other hand, urge several reasons why the terms of this statute cannot be availed of by the petitioner in furtherance of its demand for a writ of mandate herein. It is claimed by the respondents that the statute is unconstitutional because, being general in its terms, it is in contravention of section 18 of article XI of the constitution in so far as it might be held to include judgments against municipalities which are based upon contracts the liability upon which must be payable and paid out of the funds of the fiscal year in which the obligation was incurred. We fail to perceive, however, upon what theory the respondents can be heard to urge this contention, since the judgment to the payment of which they object is not of the class coming within the prohibitive terms of said article and section of the constitution. We must assume that the legislature, in the adoption of the act of 1901 above referred to, had in mind the said provision of the state constitution, and intended the operation of the act to be confined to such final judgments against municipalities as were legally payable out of the revenues of succeeding years; and we do not understand that the case of *Arthur* v. *City of Petaluma*, 175 Cal. 216, [165 Pac. 698], contains anything which militates against this view.

[4] The next contention of the respondents is that, even if the statute in question is not obnoxious to the foregoing provision of the state constitution, it has no application to the city and county of San Francisco, because it is in conflict with the provisions of its charter above set forth providing for the creation of the "Surplus Fund" out of which final judgments against said city and county shall be paid. In making this contention the respondents apparently rely upon the provisions of article XI, section 6, of the constitution, which declares that in respect to municipal affairs the charters of municipalities shall prevail, and that as to such matters they shall not be subject to or controlled by general laws. Conceding, for the sake

of the argument, although not deciding, that the subject of the payment of final judgments against municipalities is a municipal affair, we are still of the opinion that the clauses of the charter of the city and county of San Francisco providing for the creation of a ''Surplus Fund'' out of which final judgments obtained against said municipality shall be payable, are not in conflict with the provisions of the statute of 1901 so as to prevent us from making application of its terms and requirements to the instant case. We are aided in reaching this conclusion by the reasoning of the supreme court in the case of *City of Long Beach* v. *Lisenby*, 180 Cal. 52, 179 Pac. 198]. In that case the court had under consideration the question whether the statute of 1897, (Stats. 1897, p. 75), as amended by an act of the legislature approved March 12, 1901, (Stats. 1901, p. 274), was repealed by the passage during the same session of the legislature of the later act approved March 23, 1901, which is the act in question in the instant case. The earlier act provided for the funding of judgments obtained against certain municipalities through the voluntary action of the governing bodies of such municipalities in providing for the issuance of long-term bonds for the eventual payment of such judgments. The later act provided, as we have seen, for the compulsory payment of such judgments through the levy of special taxes. In comparing these two acts the supreme court pointed out that they were not in conflict, for the reason that by the former act the governing bodies of the municipalities affected by it were invested with a discretion as to whether or not they would adopt the funding plan of paying the outstanding indebtedness of such municipalities, the exercise of which discretion could not be compelled by the judgment creditor, while the later act was compulsory in its nature, and imposed upon the official body invested with the power to levy taxes the duty of making a special tax levy to pay judgments against the municipality, the performance of which duty the judgment creditor could compel by an appropriate writ. These two acts were thus stated to be ''in effect complementary in providing a twofold means by which municipalities may elect, or if they do not do so, may be compelled to pay such of their debts as are payable out of revenues other than those of the year in which the obligation was incurred.''

This reasoning applies, in our opinion, to the situation presented in the instant case. The city charter, through its provisions as to the "Surplus Fund" as the source from which judgments obtained against the municipality may be paid, leaves the matter of creating or replenishing such a fund entirely in the discretion of its various boards and officials in charge of the replenishment and disbursement of the revenues of the municipality distributed among its other funds. If they do not choose to have left on hand a surplus which would flow into the surplus fund, the judgment creditor is remediless, in so far as the charter is concerned, to compel the creation or replenishment of the only fund from which his judgment might be satisfied. The statute in question steps in at this point to provide a means by which municipalities may be compelled to liquidate their just debts. The view that the charter and statute are not in conflict is one which is in accord with the principle of justice and fair dealing which imposes upon municipalities the same moral and legal duty which rests upon individuals to pay their just obligations either voluntarily or upon compulsion. This equal duty was well exemplified in the early case of *McCracken* v. *City of San Francisco*, 16 Cal. 591, in which Mr. Justice Field, in dealing with certain restrictive provisions of the charter of San Francisco then in operation, says:

"In addition to this we are clear that the provision refers only to the acts or contracts of the city, and not to liabilities which the law may cast upon her. It was intended to restrain extravagant expenditures of the public moneys; not to justify the detention of the property of her citizens which she may have unlawfuly obtained. The plaintiff claims that the city has got his money without any consideration—by mistake—and has appropriated it to municipal purposes, and he insists that she is responsible to him for it, because the law—not her contract or permission—renders her liable. Her liability in this respect is independent of the restraining clauses of the charter; it arises from the obligation to do justice—to restore what belongs to others—which rests upon all persons, whether natural or artificial. And it may well be doubted whether it would be competent for the legislature to exempt the city, any more than private individuals, from liability under

circumstances of this character. Suppose, for example, that
the city should recover judgment against an individual for
one hundred thousand dollars, and collect the money upon
execution, and upon appeal the judgment should be re-
versed; would it be pretended that the money could not
afterwards be recovered? . . . Suppose, again, the city
should neglect to keep the streets in repair, and an in-
dividual should be injured in consequence—should break
his leg or be otherwise crippled—could she allege her in-
solvency against his claim for damages? Would her
pecuniary condition be an answer for the neglect of every
duty, legal and moral? If this were so, she would be the
most irresponsible corporation on earth, and her treasury
in many instances but a receptacle for others' property
without possibility of restitution. The truth is there is
no such exemption from liability on her part. The same
obligations to do justice rest upon her as rest upon in-
dividuals. She cannot appropriate to her own use the
property of others, and screen herself from responsibility
upon any pretense of excessive indebtedness. The law casts
upon her the legal liability and the moral duty to make
restitution. Admitting that the charter restricts her power
to incur liabilities by her own acts—though, as already
shown, its provision in this respect is merely directory—
it still leaves her liable according to the general law. The
restriction can in any event only apply to liabilities de-
pendent for their creation upon the volition of the common
council, and hence does not include the liabilities arising
from torts, or trespasses or mistakes.''

Our conclusion upon this branch of the case is, therefore,
that the provisions of the statute of 1901 upon which the
petitioner relies are not in conflict with the provisions of
the San Francisco charter with relation to liquidation of
judgments out of the surplus fund; nor, for the same or
still better reasons, do we think they are in conflict with
those other provisions of the charter to which we are re-
ferred by the respondents and which relate to the auditing
and payment of demands against the treasury, these pro-
visions having reference in our opinion only to such obliga-
tions and demands as the officials charged with the ap-
proval thereof have the power to create, or the discretion
to audit, approve, and allow.

It follows from the foregoing discussion that the petitioner herein is entitled to the issuance of a writ of mandate conformable to the prayer of its petition and to the terms of the statute upon which its application for such writ is predicated. Let the writ issue accordingly.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 18, 1919.

All the Justices concurred.