TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | |
| of | : | |
| | : | |
| JOHN K. VAN DE KAMP | : | No. 87-205 |
| Attorney General | : | |
| | : | AUGUST 13, 1987 |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |

----------------------------------------------------------------

THE HONORABLE MICHAEL H. KRAUSNICK, COUNTY COUNSEL, STANISLAUS COUNTY, has requested an opinion on the following question:

Does the borrowing of federal funds by a school district to abate asbestos hazards require electorate assent under the provisions of section 18 of article XVI of the Constitution?

CONCLUSION

The borrowing of federal funds by a school district to abate asbestos hazards does not require electorate assent under the provisions of section 18 of article XVI of the Constitution where such abatement is required by law, thereby making the debt involuntarily incurred and exempt from the constitutional requirement.

ANALYSIS

Section 18 of article XVI of the Constitution provides in part:

"No . . . school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose . . . ."

The question presented for resolution concerns whether this constitutional requirement of electorate

assent would be applicable with respect to the borrowing of funds by a school district to abate asbestos hazards in its schools. We conclude that the voter requirement would be inapplicable where an official determination has been made that such abatement action is necessary to protect human health and the environment.

School districts are authorized by the Legislature to obtain federal funds for various purposes (see Ed. Code, §§ 12400-12405),[1] including "asbestos inspection, testing, encapsulation, and removal" (§ 49410.5, subd. (b)). Congress has established an asbestos hazards abatement program under which local school districts may receive grants or loans for:

"(A) abating the threat posed by materials containing asbestos to the health and safety of children or employees;

"(B) replacing the asbestos materials removed from school buildings with other appropriate building materials; and

"(C) restoring school buildings to conditions comparable to those existing before abatement activities were undertaken pursuant to this section." (20 U.S.C. § 4014(c)(1).)

To obtain a loan or grant, a school district must send its application to its state governor who ranks it with other applications "based on the nature and magnitude of the existing and potential exposure presented by the asbestos materials." (20 U.S.C. § 4013(b)(2).) The governor submits all applications and his or her priority list to the federal administrator who makes the final determination as follows:

"In ranking applications, the Administrator shall consider--

"(A) the priority assigned to the abatement program by the Governor pursuant to section 4013(b)(2) of this title;

"(B)(i) the likelihood of release of asbestos fibers into a school environment;

"(ii) any other evidence of the risk caused by the presence of asbestos including, but not limited to, situations in which there is a substantial quantity of dry loose asbestos-containing material on horizontal surfaces or asbestos-containing material is substantially deteriorated or damaged, and there is asbestos-containing material in an air plenum or in a high traffic area, confined space or within easy reach of a passerby;

"(iii) the extent to which the corrective action proposed by the applicant will

---

[1]All references hereafter to the Education Code are by section number only.

reduce the exposure of school children and school employees; and

"(iv) the extent to which the corrective action proposed by the applicant is cost-effective compared to other techniques including management of material containing asbestos." (20 U.S.C. § 4014(c)(2).)

The federal loans "have a maturity period of not more than twenty years" and are "repayable during such period at such times and in such amounts as the Administrator [of the Environmental Protection Agency] may specify in the loan agreement." (20 U.S.C. § 4014(f).) The loans in question are thus authorized by both state and federal statute. The only issue here is whether voter approval for a loan must first be obtained where it would cause a district to incur an indebtedness "exceeding in any year the income and revenue provided for such year" as specified in the Constitution.

In answering this question, we note that the voter approval requirement for debts created by school districts is also applicable to the debts of counties and cities and that this constitutional language has received extensive commentary. (See, e.g., Kosel, Municipal Debt Limitation in California (1977) 7 Golden Gate L. Rev. 641; Beebe, Hodgman & Sutherland, Joint Power Authority Revenue Bonds (1968) 41 So. Cal.L.Rev. 19; Note, States: Municipal Corporations: Debt Limitation: Circumvention (1950) 38 Cal.L.Rev. 962; Note, Municipal Corporations: Deductions of Assets in Computation of Indebtedness (1941) 29 Cal.L.Rev. 779; Note, Municipal Corporations: Debt Limitations: Cal. Const., art. XI, § 18; Contingent Liability (1935) 23 Cal.L.Rev. 445.)

In Lagiss v. County of Contra Costa (1963) 223 Cal.App.2d 77, 85, the Court of Appeal explained the intent of having prior electorate approval of long-term financial obligations: "This constitutional provision was enacted to prevent the improvident creation of inordinate debts which might be charged against taxpayers in ever increasing volume from year to year." (See also Compton Community College etc. Teachers v. Compton Community College Dist. (1985) 165 Cal.App.3d 82, 88; Starr v. City and County of San Francisco (1977) 72 Cal.App.3d 164, 173-175; Wright v. Compton Unified Sch. Dist. (1975) 46 Cal.App.3d 177, 181.)

Several exceptions, however, to the voter requirement have been recognized by the courts. In 67 Ops.Cal.Atty.Gen. 349 (1984), we examined these situations and described the "involuntary debt" exception as follows:

"If the debt is not 'voluntarily' incurred, the constitutional requirement will be found inapplicable. (American Co. v. City of Lakeport, supra, 220 Cal. 548, 557-558; City of Pasadena v. McAllaster (1928) 204 Cal. 267, 273; City of Long Beach v. Lisenby, supra, 180 Cal. 52, 57-58; Lotts v. Board of Park Commrs. (1936) 13 Cal.App.2d 625, 635.) The primary application of this theory has been where the Legislature has 'imposed' an obligation upon local governments by statute. (See, e.g., Lewis v. Widber (1983) 99 Cal. 412, 413; Wright v. Compton Unified School District (1975) 46 Cal.App.3d 177, 181-183; City of La Habra v. Pellerin (1963) 216 Cal.App.2d 99, 102; People ex rel. City of Downey v. Downey County Water Dist.

(1962) 202 Cal.App.2d 786, 805; Sacramento Municipal Util. Dist. v. Spink (1956) 145 Cal.App.2d 568, 579-580.) . . . . 'The unarticulated rationale for this exception undoubtedly is that it is pointless to submit obligations imposed by law to the electorate for approval, since the local entity cannot refuse to pay the debt, regardless of election outcome. [Citation.]'" (Id., at pp. 353-354.)

The involuntary debt exception was first recognized by the Supreme Court in Lewis v. Widber (1893) 99 Cal. 412. The court stated: "The clear intent expressed in the said clause was to limit and restrict the power of the municipality as to any indebtedness or liability which it has discretion to incur or not to incur." (Id., at p. 413; see Compton Community College, etc. Teachers v. Compton Community College Dist., supra, 165 Cal.App.3d 82, 90; County of Shasta v. County of Trinity (1980) 106 Cal.App.3d 30, 37; Starr v. City and County of San Francisco, supra, 72 Cal.App.3d 164, 172.)

While a specific duty must be found for this exception to apply (County of Los Angeles v. Byram (1951) 36 Cal.2d 694, 699; Compton Community College etc. Teachers v. Compton Community College Dist., supra, 165 Cal.App.3d 82, 91-94; Wright v. Compton Unified Sch. Dist., supra, 46 Cal.App.3d 177, 183), it is unnecessary that the governing law establish the particular amount or manner of expenditure (Compton Community College etc. Teachers v. Compton Community College Dist., supra, 165 Cal.App.3d 82, 93-94).

In County of Los Angeles v. Byram, supra, 36 Cal.2d 694, for example, the Supreme Court ruled that the cost of constructing a courthouse was not subject to the constitutional provision because the county had a legal duty to provide "adequate quarters" for the courts. This legal duty was found sufficient even though the county had discretion in determining what kind of courthouse to supply and how much money to spend. (Id., at p. 700.)

In City of La Habra v. Pellerin (1963) 216 Cal.2d 99, the Court of Appeal similarly held that voter approval would not be required for the construction of police and fire stations. Even though the city had discretion in determining the nature and cost of these buildings, the court found that the state law requiring the furnishing of police and fire protection was sufficient to satisfy the involuntary debt exception. (Id., at p. 102.)

With respect to the abatement of asbestos hazards by a school district, Congress has recently enacted the Asbestos Hazard Emergency Response Act of 1986. (15 U.S.C. §§ 2641-2654.) The legislation directs the administrator of the Environmental Protection Agency to adopt regulations requiring the inspection, cleanup, and disposal of asbestos from schools in a timely manner. (15 U.S.C. § 2643.) Each school district is required to develop an asbestos management plan describing the "measures to be taken to respond to any friable asbestos-containing material . . . including the location or locations at which a response action will be taken, the method or methods of response action to be used, and a schedule for beginning and completing response actions." (15 U.S.C. § 2643(i)(1)(C).) If the regulations are not promulgated, Congress itself has directed the inspection, cleanup, and disposal of the asbestos. (15 U.S.C. § 2644.) Section 2644 of title 15 of the United States Code provides in part:

"The local educational agency shall . . . develop and begin implementation of an operation and maintenance plan with respect to friable asbestos-containing material in a school building under its authority . . . .

"The local educational agency shall . . . develop a management plan for responding to asbestos-containing material in each school building under its authority and . . . begin implementation of such plan . . . and . . . complete implementation of such plan in a timely fashion.

". . . . . . . . . . . . . . . . . . . . . . . .

"The ambient interior concentration of asbestos after the completion of actions . . . shall not exceed the ambient exterior concentration, discounting any contribution from any stationary source . . . ."

The federal legislation additionally provides that in an emergency situation the federal administrator or the governor of a state may "act to protect human health or the environment" and "seek reimbursement of all costs of an emergency action" from the school district, or either official may seek injunctive relief against the district "as may be necessary to respond to the hazard." (15 U.S.C. § 2648.) For various violations of the regulatory or statutory requirements, a school district may incur a civil penalty of up to $5,000 a day. (15 U.S.C. § 2647.) Congress has also authorized the states to adopt more stringent requirements than the federal standards with respect to asbestos hazards in schools. (15 U.S.C. § 2649.)[2]

We believe that once an official determination has been made that action is necessary to protect human health and the environment, the district would have sufficient duty under federal law to abate the asbestos hazard so as to render inapplicable the provisions of article XVI of the Constitution when borrowing federal funds to perform such duty. Here the determination would necessarily be made by the school district in applying for the federal loan, by the Governor in giving the application a priority, and by the federal government in providing the loan based upon the statutory criteria of requisite need. (See 20 U.S.C. §§ 4013-4014.) Under such circumstances it would not be a task voluntarily assumed by the district for which prior voter approval would be required. Even though a district may have discretion in determining the amount and manner of the expenditure, it would be under a statutory obligation to provide a safe and healthy environment in its schools. Hence the involuntary debt exception would be applicable. (See County of Los Angeles v. Byram, supra, 36 Cal.3d 694, 700; Compton Community College etc. Teachers v. Compton Community College Dist., supra, 165 Cal.App.3d 82, 93-94; City of La Habra v. Pellerin, supra, 216

---

[2]The Commerce Clause (U.S. Const., art. I, § 8, cl. 3) gives Congress the authority to control asbestos hazards in schools. (See Garcia v. San Antonio Metro. Transit Auth. (1985) 469 U.S. 536, 539-557; Hodel v. Indiana (1981) 452 U.S. 314, 323-329; Hodel v. Indiana Surface Min. & Recl. Assn. (1981) 452 U.S. 264, 276-292; SED, Inc. v. City of Dayton (S.D. Ohio 1981) 519 F.Supp. 979, 982-984; SED, Inc. v. City of Dayton (S.D. Ohio 1981) 515 F.Supp. 737, 740.)

Cal.App.2d 99, 102.)  The fact that federal law rather than state law provides the duty makes the debt no less involuntary for purposes of the exception.

In answer to the question presented, therefore, we conclude that the borrowing of federal funds by a school district to abate asbestos hazards does not require electorate assent under the provisions of section 18 of article XVI of the Constitution where such abatement is required by law, thereby making the debt involuntarily incurred and exempt from the constitutional requirement.

* * * * *