[Civ. No. 2923. Third Appellate District.—January 20, 1925.]

## J. E. BIRCH, Appellant, v. J. W. MONROE, Auditor, etc., Defendant.

[1] SCHOOL LAW—TEACHERS' SALARY FUND—REFUSAL TO AUDIT DEMAND — MANDAMUS — INSUFFICIENT DENIAL. — In a proceeding in *mandamus* to compel the county auditor to audit a demand covering petitioner's last month's salary as a teacher, after the same has been issued to him by the board of trustees of the district and has been duly examined and approved by the county superintendent, where the petitioner alleges that there is in the funds of the district "a sum not otherwise appropriated and which sums are applicable to the payment of the claim of your petitioner," the affirmative allegation in the answer that a balance in excess of the amount of petitioner's demand remains in the salary fund of the district for the preceding fiscal year, but that respondent "has no means of knowing that all of the claims against said salary fund for said fiscal year have been met and extinguished, or that claims against said fund evidenced by requisitions drawn by the board of trustees of said school district, examined and approved by said superintendent of schools, do not remain outstanding and unpaid," does not present any issue.

[2] ID.—DISCHARGE OF OFFICIAL DUTY—PRESUMPTION—KNOWLEDGE OF AUDITOR.—In such proceeding, it is to be presumed that the auditor discharged the official duty required of him by section 1700 of the Political Code, and if he did he knows whether the teachers employed during such preceding fiscal year have been paid their salaries for that year; and since the teachers' salary fund can be used only for the payment of teachers' salaries and all facts with reference to what teachers were employed, and for how long, etc., are presumptively within the knowledge of the auditor, his allegation that he has no means of knowing whether there are outstanding claims against that fund states no defense.

[3] ID.—CONTRADICTORY DENIALS — DEFENSE RELIED UPON. — In such proceeding, it is immaterial that the answer of respondent denies that there is a sufficient sum in the teachers' salary fund of the district not otherwise appropriated which is applicable to the payment of petitioner's claim, where this is followed by the affirmative allegation showing that there is a balance in such salary fund for the preceding fiscal year, in excess of the amount of petitioner's claim, but that respondent "has no means of knowing that all of the claims against said salary fund for said fiscal year have been met and extinguished," and the only defense relied upon by respondent is this latter affirmative allegation.

[4] ID.—LIMITATION UPON EXPENDITURES—STATUTORY CONSTRUCTION—CONSTITUTIONAL LAW.—A construction requiring that the balance in the teachers' salary fund of a school district at the end of each fiscal year, except as to liabilities incurred during the year in which the fund was raised, be held in "cold storage" for four years, until all possible claims of that year against the same are barred by the provisions of section 337 of the Code of Civil Procedure, should not be given to article XI, section 18, of the constitution, unless imperatively required.

[5] ID.—OUTSTANDING CONTRACTUAL OBLIGATIONS—KNOWLEDGE—PRESUMPTION.—The inhibition contained in article XI, section 18, of the constitution applies only to contractual obligations; and it is not to be presumed that public officers so inefficiently conduct the public business as to render it difficult or impracticable, on issues properly framed, to determine at any time the amount of outstanding contractual obligations, particularly in a case where the fund in question is limited to one specified use and claims against the fund must be based upon contracts, the terms of which are presumptively within the knowledge of the auditor.

[6] ID.—BALANCE OF FUNDS—TRANSFER TO COUNTY SCHOOL FUND—DUTY OF SUPERINTENDENT OF SCHOOLS.—In this proceeding in *mandamus* to compel the county auditor to audit a demand covering petitioner's last month's salary as a teacher, the contention of the respondent auditor that it was the duty of the superintendent of schools, under section 1543, subdivision two, of the

70 Cal. App.—42

Political Code, to transfer eighty per cent of the balance in the funds of the previous year to the unapportioned county school fund, was without merit where the evidence showed that there was no excess of estimated receipts over disbursements to transfer.

(1) 38 C. J., p. 889, n. 16.   (2) 22 C. J., p. 130, n. 30, p. 138, n. 11; 38 C. J., p. 890, n. 20.   (3) 31 Cyc., p. 214, n. 38.   (4) 35 Cyc., p. 827, n. 32.   (5) 22 C. J., p. 130, n. 30; 35 Cyc., p. 974, n. 19.   (6) 35 Cyc., p. 822, n. 3.

APPEAL from a judgment of the Superior Court of Glenn County. Claude F. Purkitt, Judge. Reversed.

The facts are stated in the opinion of the court.

George R. Freeman for Appellant.

Duard F. Geis for Respondent.

FINCH, P. J.—This appeal is from the judgment herein denying plaintiff's petition for a writ of mandate.

The plaintiff was a teacher in the Willows Union School District during the fiscal year ending June 30, 1923. The board of trustees of the district issued to him an order for the payment of his last month's salary in the sum of $191.66, payable out of the teachers' salary fund. The county superintendent duly examined and approved the demand, but the defendant county auditor refused to allow the same. **[1]** Plaintiff alleged that there was in the funds of the district "a sufficient sum not otherwise appropriated and which sums are applicable to the payment of the claim of your petitioner." The answer affirmatively alleges "that a balance in excess of one hundred ninety-one dollars and sixty-six cents remains in the salary fund of the Willows Union School District for the fiscal year 1921–22. That . . . . said defendant has no means of knowing that all of the claims against said salary fund for said fiscal year have been met and extinguished, or that claims against said fund evidenced by requisitions drawn by the board of trustees of said school district, examined and approved by said superintendent of schools, do not remain outstanding and unpaid." The court found that at the time of the demand upon the auditor there was in the teachers' salary fund of the district "for the year ending June 30th, 1922, the sum of $1,424.84, and there was in said fund for the

year ending June 30th, 1923, the sum of $7.21, both of which funds were made up of the school moneys provided for the payment of teachers' salaries.''

It seems clear that the foregoing affirmative allegation of the answer did not present any issue. Affirmative allegations should be made positively or on information and belief. The allegation here in question does not even state that the auditor believed that there were outstanding claims against the salary fund of the preceding year. It must be presumed that the auditor knew whether there were any such outstanding claims. The salary fund is made up of the money provided by the state and sixty per cent of that provided by the county. Article IX, section 6, of the constitution provides: ''The entire amount of money provided by the state, and not less than sixty per cent of the amount of money provided by county, or city and county, school taxes shall be applied exclusively to the payment of public school teachers' salaries.'' Section 1696 of the Political Code provides: ''Every teacher in the public school must: . . . Second—Before taking charge of a school, and one week before closing a term of school, notify the county superintendent of such fact, naming the day of opening or closing. . . . Sixth—Make an annual report to the county superintendent at the time and in the manner and on the blanks prescribed by the superintendent of public instruction. Any teacher who shall end any school term before the close of the school year, shall make a report to the county superintendent immediately after the close of such term; and any teacher who may be teaching any school at the end of the school year shall, in his or her annual report, include all statistics for the entire school year, notwithstanding any previous report for a part of the year. The superintendent of schools shall in no case draw a requisition for the salary of any teacher for the last month of the school term, until the report required by this subdivision has been filed, and by him approved.'' Section 1543, subdivision 15, makes it the duty of the superintendent of schools ''to preserve carefully all reports of school officers and teachers.'' Section 1700 provides: ''No warrant must be drawn in favor of any teacher, unless the officer whose duty it is to draw such warrant is satisfied that the teacher has faithfully performed all the duties prescribed in section sixteen hundred and ninety-six.'' [2] It is to be presumed that the auditor

discharged the official duty required of him by section 1700, and if he did he knows whether the teachers employed during the fiscal year ending June 30, 1922, have been paid their salaries for that year. All trustees' orders for teachers' salaries—and they must pass through the auditor's hands—are required to state the monthly salaries of the teachers in whose favor they are drawn and the months for which such salaries are due. (Sec. 1543, subd. 3.) The auditor's own books must show what warrants have been drawn in favor of teachers and the amounts thereof. Since the teachers' salary fund can be used only for the payment of teachers' salaries and all the foregoing facts are presumptively within the knowledge of the auditor, his allegation that he has no means of knowing whether there are outstanding claims against that fund states no defense. [3] It is true that the answer denies that there is a sufficient sum in the teachers' salary fund of the district not otherwise appropriated which is applicable to the payment of plaintiff's claim, but this is followed by the allegation that there is a balance in such salary fund of the fiscal year ending June 30, 1922, in excess of the amount of such claim but that the "defendant has no means of knowing that all of the claims against said salary fund for said fiscal year have been met and extinguished." It is thus apparent from the answer, as well as from respondent's argument on appeal, that the only defense relied upon is that the defendant had no means of knowing whether there were outstanding claims against the fund of the previous year. The defense here relied upon is unlike that in the case of *Bilby* v. *McKenzie,* 112 Cal. 143 [44 Pac. 341], cited by respondent. In that case it was alleged in the answer and proved at the trial that there was an outstanding claim against the fund of the previous year, which was in litigation and which, if determined to be valid, would exhaust such fund.

[4] Respondent's contention is based upon the provisions of article XI, section 18, of the constitution, which provides: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose." Respondent argues that, "as a corollary" to such inhibition, the balance

in the fund of a preceding year cannot be used for any purpose other than the payment of liabilities incurred during that year until such liabilities have been extinguished; that the auditor has no means of knowing whether there are any such outstanding liabilities until the same have become barred by the statute of limitations; and that therefore the balance in such fund, except as to liabilities incurred during the year in which the fund was raised, must be held in cold storage for four years, until all possible claims of that year against the same are barred by the provisions of section 337 of the Code of Civil Procedure. If this course were pursued there would at all times remain in the treasury frozen balances of four fiscal years. Such a construction should not be given to the constitutional inhibition unless imperatively required. [5] This constitutional provision has been held applicable only to contractual obligations. (*City of Long Beach* v. *Lisenby,* 180 Cal. 52, 57 [179 Pac. 198].) It is not to be presumed that public officers so inefficiently conduct the public business as to render it difficult or impracticable, on issues properly framed, to determine at any time the amount of outstanding contractual obligations. Particularly in a case such as this, where the fund in question is limited to one specified use and claims against the fund must be based upon contracts, the terms of which, as stated, are presumptively within the knowledge of the auditor, it would be a simple matter to establish whether or not there were any outstanding claims. There is no pretense that there are any such claims, but only that the auditor has no means of ascertaining whether there are any.

[6] Respondent contends that it was the duty of the superintendent of schools to transfer eighty per cent of the balance in the funds of the previous year to the unapportioned county school fund. Section 1543, subdivision two, of the Political Code, provides: "If at the beginning of any school year any school district shall have an unencumbered balance in its maintenance funds which combined with its total estimated income to be received for maintenance purposes from all sources other than district taxes during the current year shall exceed a sum of money sufficient to maintain and conduct the schools of the district during the current year, then the county superintendent of schools shall in the month of August of that school year transfer a sum of money from

the maintenance funds of that district to the unapportioned school funds of the county, or city and county, equal to eighty per cent of the excess estimated as herein provided.'' The evidence shows that on the first day of July, 1922, there was a balance on hand in the maintenance funds, including the teachers' salary fund, of the district of $3,312.46. The estimated receipts from the state for the fiscal year ending June 30, 1923, amounted to $11,910, and from the county, $13,176, making a total of $28,398.46. The estimated outstanding indebtedness at the same time was the sum of $400. The estimated expenditures for the fiscal year ending June 30, 1923, amounted to $34,100, including payment of the outstanding indebtedness of $400. It was therefore necessary to levy a special tax amounting to $5,701.54. The estimated receipts of the teachers' salary fund, computed upon the foregoing sums, amounted to a total of $21,240.44, including the balance of $1,424.84. The estimated salaries of teachers, then employed for the year ending June 30, 1923, amounted to $23,500. In view of the foregoing, it is too clear to admit of controversy that the superintendent of schools was not authorized to transfer any part of the balance on hand on the first day of July, 1922, to the unapportioned county school fund. There was no excess of estimated receipts over disbursements to transfer.

The judgment is reversed and the trial court is directed to enter judgment for plaintiff as prayed for by him.

Hart, J., and Plummer, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 19, 1925.

All the Justices concurred.