[S. F. No. 11578. In Bank.—October 20, 1927.]

## ISADORE GRIGSBY, Appellant, v. MRS. P. S. KING et al., Trustees of Napa School District, Respondents.

[1] School Law—Boards of Trustees—Construction of Section 1609, Political Code.—In section 1609 of the Political Code the legislature was dealing with boards of trustees as a class, investing them with powers not otherwise possessed and providing the limitations and restrictions to be attached to the exercise of such powers.

[2] Id.—Administrative Agency—Privileges and Rights.—A board of school trustees, being neither a natural nor an artificial person, does not enjoy the same natural privileges and constitutional rights as do such persons. Such a board is merely an administrative agency created by statute and invested only with the powers expressly conferred, subject to the limitations thereto attached by the legislature.

[3] Id.—Employment of Teachers—Power of Board.—The otherwise plenary power of boards of school trustees, given by section 1609 of the Political Code, is limited by the provisions of subdivision 2 that they may employ as teachers "only persons holding legal teaching certificates then on file with the County Superintendent," which is to be construed as a limitation upon the power of the board to employ and not the extension of a privilege to those having certificates on file.

[4] Id.—Dismissal of Teachers.—The plenary power of boards of school trustees to dismiss teachers is modified and limited by the provisions of subdivisions (h), (i), and (j), of section 1609 of the Political Code, which provide that, unless for cause, a board shall not have power to dismiss probationary teachers at all, except at the end of the school year, and that, unless for cause, a board shall not have power to dismiss permanent teachers at all,

except on discontinuance of special teaching service or diminution in number of pupils, and these limitations are expressly withdrawn in the case of substitutes who may be dismissed by the board any time.

[5] ID.—CLASSIFICATION OF TEACHERS.—The plenary power of a board of school trustees to classify teachers is modified and limited by the provisions of subdivisions (c), (d), and (e), of section 1609 of the Political Code, to the effect that a board shall classify as substitutes only "persons employed for less than a school year to take the places of absent regular teachers," that the board shall classify as probationary teachers only "those persons employed for the school year and who have not been classified as permanent," and subdivision (e) compels the board—all boards in all districts—to classify as permanent all successful two-year teachers, and to make its decision as to whether or not the teacher is a successful one at the end of the two-year period, but the proviso exempts boards of trustees in small districts from this duty.

[6] ID.—CLASSIFICATION OF BOARDS OF SCHOOL TRUSTEES—CONSTITUTIONALITY OF.—In legal effect, the proviso in subdivision (e) of section 1609 of the Political Code divides boards of school trustees into two classes, according to the size of their districts, the proviso applying to a district employing at least eight teachers under a principal, but not to smaller districts, and this classification of school districts has no constitutional objection to it, as it is in effect a classification based upon population.

[7] ID.—QUALIFICATION OF TEACHERS—VALIDITY OF STATUTE.—There is nothing in the law to prevent any teacher serving in any school district which he or she may select; and any unusual benefit or detriment enjoyed or suffered by an individual teacher is merely incidental to the main purpose of the statute and does not invalidate it.

[8] ID.—PERSONAL RIGHTS — CONSTITUTIONAL GUARANTIES — APPLICATION OF.—Constitutional guaranties of personal rights are inapplicable to an impersonal, administrative agency exercising special and limited powers, such as boards of school trustees, which have no existence except by legislative enactment, and possess no natural rights and exercise no functions except those specially granted to them.

[9] ID.—CLASSIFICATION OF TEACHERS—PERMANENT TEACHERS—DUTY OF BOARD.—Under section 1609 of the Political Code, where it is shown that a teacher has performed two years of successful work it is the duty of the board of trustees to classify her as a permanent teacher, and any other action on its part is beyond its power and of no avail.

9. See 23 Cal. Jur. 133.

[10] ID.—FORM OF ACTION.—An action by a school-teacher who has been successfully employed as a regular teacher in a school district for three consecutive years to restrain the board of trustees from dismissing her toward the end of the third year without holding any hearing or making any charges against her is not one to enforce a contract for personal services, but to restrain action by the board of trustees in excess of its power to the detriment and damage of the plaintiff.

---

(1) 12 **C. J.**, p. 1136, n. 80; 36 **Cyc.**, p. 992, n. 91. (2) 12 **C. J.**, p. 769, n. 33; 35 **Cyc.**, p. 899, n. 13, p. 901, n. 20. (3) 35 **Cyc.**, p. 1079, n. 96. (4) 35 **Cyc.**, p. 858, n. 48. (6) 35 **Cyc.**, p. 1074, n. 52. (7) 35 **Cyc.**, p. 1070, n. 7. (9) 32 **C. J.**, p. 251, n. 3.

APPEAL from a judgment of the Superior Court of Napa County. R. L. Thompson, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

E. L. Webber for Appellant.

William A. Alderson, *Amicus Curiae*, for Appellant.

Leo A. Murasky, *Amicus Curiae*, for California Council of Education.

Frank L. Fenton, *Amicus Curiae*, for San Francisco Teachers' Association.

Henry F. Marshall, *Amicus Curiae*.

Thomas C. Anglim, District Attorney, and L. E. Johnston, Deputy District Attorney of Napa County, for Respondents.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel of Los Angeles, *Amici Curiae*.

LANGDON, J.—This is an appeal by the plaintiff from a judgment against her in an action brought to restrain the members of a board of school trustees "from attempting to deprive plaintiff of her position as a permanent teacher in the schools of the city of Napa."

The trial court denied relief upon three grounds: (1) Injunction will not lie for a breach of contract for the performance of personal services, (2) section 1609, article VII, of the Political Code, known as the ''Teacher's Tenure Act,'' if interpreted to give plaintiff the standing of a permanent teacher under the facts of this case, is unconstitutional as denying the right to employer and employee of contracting for a definite, specific period of time, and (3) said section of the Political Code is unconstitutional because it is an unjust discrimination against a class of schools and of teachers.

It is to be observed that the last session of the legislature amended this section so as to obviate all question of an objection thereto upon the last ground above stated. Prior to such amendment, the sections involved in our inquiry were as follows:

''Sec. 1609. Boards of School Trustees . . . shall have power and it shall be their duty:

''Second—To employ teachers as provided in part fifth . . . teachers may be elected on or after May second for the next ensuing school year and each teacher so elected shall be deemed re-elected from year to year, except as hereinafter specified; . . .

''Fifth—To employ, as teachers, only persons who hold legal certificates for teaching . . . to serve as substitutes, probationary or permanent teachers. . . .

'' (c) To classify as substitute teachers those persons employed as teachers from day to day for less than one school year. . . .

'' (d) To classify as probationary teachers those persons employed as teachers for the school year, and who have not been classified as permanent teachers . . . such classification to be made at the time of employment, and thereafter in the month of July of each school year.

'' (e) To classify as permanent teachers all persons who shall have been successfully employed as teachers by the district for two consecutive school years at the time of classification; *provided, also, that the two years of successful service shall have been performed in a district employing at least eight teachers under a principal who shall devote at least two hours per day* to supervision in the school or

schools under his control. Such classification shall be made at the end of the two years of such employment.

"(h) To dismiss substitute teachers at any time. . . .

"(i) To dismiss probationary teachers during the school year for cause only, as in the case of permanent teachers, except that on or before the tenth day of June in any year the governing board may give notice in writing to a probationary teacher that his services will not be required for the ensuing year. . . .

"(j) To dismiss permanent teachers, principals or supervisors of special subjects . . . only for one or more of the following causes, after a fair and impartial public hearing. Causes for dismissal are. . . .

"It is hereby provided, however, that whenever it becomes necessary to decrease the number of permanent teachers employed by a school district . . . on account of the discontinuance of a particular kind of teaching service . . . the governing board may dismiss such teacher or teachers at the end of the school year . . . the teacher or teachers so dismissed shall be the teacher or teachers engaged in the type of teaching work so discontinued."

The defendants are trustees of a school district employing at least eight teachers under a principal devoting more than two hours per day to supervision in the school or schools under his control. The plaintiff had been successfully employed as a regular teacher in said district for three consecutive years. Toward the end of the third year defendant board attempted to dismiss her by letter without holding any hearing or making any charges against her. The complaint set forth these facts and prayed for injunctive and general relief.

[1] In holding this section violative of state constitutional provisions contained in article IV, section 25, and article I, section 11, and also in article I, section 21, and the fourteenth amendment to the constitution of the United States, the trial court proceeded upon the theory that teachers as a class were the subjects of legislation, and that a discrimination within that class was apparent. We think that in the section of the Political Code under construction the legislature was plainly dealing with boards of trustees as a class, investing them with powers not other-

wise possessed and providing the limitations and restrictions to be attached to the exercise of such powers.

[2] Furthermore, a board of school trustees, being neither a natural nor an artificial person, does not enjoy the same natural privileges and constitutional rights as do such persons. Such a board is merely an administrative agency created by statute and invested only with the powers expressly conferred, subject to the limitations thereto attached by the legislature. As aptly stated by counsel, it is anomalous that the board of trustees should claim powers granted to it by statute, and only by statute, and attack as unconstitutional the limitations imposed upon those powers by the same statute.

Title III of the Political Code is entitled "Education," and chapter III thereof bears the caption "Public Schools." This chapter is divided into twenty-one articles, each with its appropriate subtitle. Article VII is entitled "Boards of Trustees of School Districts and City Boards of Education" and is divided into twenty-three sections. Section 1603 deals with boards of trustees with respect to membership; the following section deals with new districts and the following section deals with vacancies. The succeeding sections prescribe the powers and duties of said boards with respect to various matters, section 1609, the subject of our particular examination, dealing with the power of said boards with reference to employees and with particular reference to teachers.

[3] Part second of the section, above quoted, empowers the board to employ teachers as provided in part fifth. Part fifth empowers the board to employ persons to serve as substitutes, probationary or permanent teachers. The power to employ imports the power to fix the term of and so end the employment. The power to employ in classes necessarily implies the power to determine who shall be employed in each class, i. e., to classify. If this were the entire content of the enactment, the board would then have plenary power in three particulars—to employ, to classify, and to dismiss teachers. But further provisions appear in the act which modify and limit the power conferred by imposing a duty with respect to its exercise. The otherwise plenary power of the board to employ teachers is limited by the provisions of subdivision (2) that they may

employ as teachers "only persons holding legal teaching certificates then on file with the County Superintendent." We think this is to be construed as a limitation upon the power of the board to employ and not the extension of a privilege to those having certificates on file.

[4] Likewise, the plenary power of the board to dismiss is modified and limited by the provisions of subdivisions (h), (i), and (j). These subdivisions provide that, unless for cause, the board shall not have power to dismiss probationary teachers at all, except at the end of the school year; that, unless for cause, the board shall not have power to dismiss permanent teachers at all, except on discontinuance of special teaching service or diminution in number of pupils, and these limitations are expressly withdrawn in the case of substitutes who may be dismissed by the board at any time.

[5] Similarly, the plenary power of the board to classify is modified and limited by the provisions of subdivisions (c), (d), and (e). It is therein provided that the board shall classify as substitutes only "persons employed for less than a school year to take the places of absent regular teachers"; that the board shall classify as probationary teachers only "those persons employed for the school year and who have not been classified as permanent." And subdivision (e), under attack here (read without the proviso), compels the board—all boards in all districts—to classify as permanent all successful, two-year teachers, and to make its decision as to whether or not the teacher is a successful one at the end of a two-year period. It limits the power of the board to act otherwise. But by the proviso, the legislature exempts boards of trustees in small districts from this duty.

The distinction, then, is among boards of trustees—those in small districts having larger powers with reference to dismissal of teachers than those in larger districts, where the discretion in this matter is limited.

[6] In legal effect, the proviso divides the boards of trustees into two classes, according to the size of their districts. This seems a proper classification, based upon many reasons which are readily apparent. "There is no constitutional objection to the classification of school districts any more than of cities." (*In re Sugar Notch Borough,* 192 Pa. 349 [43 Atl. 985].) There would seem to be no reason

202 Cal.—20

why school districts may not be classified according to population for purposes of administration and government as well as municipalities. (*People* v. *Lodi High School District*, 124 Cal. 699 [57 Pac. 660].) The proviso prescribes the service which shall render operative the mandate of the section toward the trustees. It must be performed in a "district employing at least eight teachers under a principal, etc." But smaller districts are exempted from the purview of the section. This results in the formation of two classes of school trustees—those of large districts and those of small districts, the one subject to the mandate of the section and the other exempt. And this classification, while apparently based upon the number of teachers employed, is, in the last analysis, based upon the population of the districts and within the scope of the decisions hereinbefore quoted, for under the law, the number of teachers employed depends upon the number of pupils, and that, of course, upon the population of the district.

There is no discrimination against the boards of trustees in small districts; the classification is based upon a substantial difference, pertinent to the distinction. In a large district, employing a supervising principal, the board, having the benefit of this expert service and counsel, may reasonably arrive at a decision as to the propriety of granting permanent tenure to a teacher within a definite period of time, while the board of a smaller district, with no special means of measuring the fitness of a teacher, is not in the same position as the board which has available the services and advice of its expert supervisor, who spends at least two hours each day directly observing, checking and supervising the work of the teachers under his charge.

Long prior to the enactment of the Teacher's Tenure Act, the legislature had made a classification of school districts practically identical in character with the classification we are considering, for it had, in effect, said to school districts that those having eight teachers or more might employ a nonteaching superintendent to supervise the work of such teachers.

[7] There is nothing in the law to prevent any teacher from serving in any school district which she may select. Any unusual benefit or detriment enjoyed or suffered by an individual teacher is merely incidental to the main purpose

of the statute and does not invalidate it. "The restrictions of the Constitution upon legislation apply to direct legislation, not to the incidental operation of statutes constitutional in themselves upon other subjects than those with which they directly deal." (*In re Sugar Notch Borough,* 192 Pa. 349 [43 Atl. 985]; *Commonwealth* v. *Gilligan,* 195 Pa. 504 [46 Atl. 124].)

[8] As to the other reason urged by respondents for holding the law in question unconstitutional, we think it is clear that constitutional guaranties of personal rights are inapplicable to an impersonal, administrative agency exercising special and limited powers. Boards of trustees have no existence, except by legislative enactment. They possess no natural rights; they exercise no functions except those specially granted to them. "A public office is a mere public agency created by the people for the purpose of administration of the necessary functions of organized society." (*In re Carter,* 141 Cal. 316 [74 Pac. 997].)

[9] It is also urged in support of the judgment that plaintiff failed to bring herself within the provisions of section 1609, because her contracts showed employment for a fixed, definite term. It was stipulated that there were written contracts for the first and second years' service, and that the third year's service was rendered pursuant to re-election by the board at the end of the second year. The law requires nothing more. The showing of two years' successful work brings plaintiff within the statute, and it was the duty of the board at that time to classify her as a permanent teacher, and any other action on its part was beyond its power and of no avail.

[10] The view we have taken disposes of the objection to the form of relief asked, for the action becomes, in effect, not one to enforce a contract for personal services, but to restrain action by the board of trustees in excess of its power to the detriment and damage of plaintiff.

The judgment appealed from is reversed.

Curtis, J., Shenk, J., Waste, C. J., and Seawell, J., concurred.

Richards, J., concurred in the judgment.