[Civ. No. 112. Fourth Appellate District.—August 27, 1930.]

MARGARET M. MARTIN, Respondent, v. PERCY FISHER et al., Appellants.

Stephen Connell, District Attorney, and Earl S. Lovett, Deputy District Attorney, for Appellants.

R. A. McKay and Allan Brant for Respondent.

MARKS, J.—Respondent was a teacher with a certificate authorizing her to teach in the elementary grades in California. The Escondido School District was a school district in San Diego County employing more than eight teachers under a principal who devoted more than two hours a day to the supervision of the schools under his control. Appellants compose the board of trustees of the school district. For brevity, the Escondido School District will be referred to hereafter as the district, and its board of trustees as the appellants.

In July, 1920, respondent entered into a written contract with the district to teach in its elementary school for one year. Her contract was renewed yearly thereafter until 1925, when appellants notified her that she would not be employed for the school year 1925–1926. No charges were filed against her and she had no hearing on this dismissal. It is admitted that in 1925 she was a permanent teacher as defined in section 1609 of the Political Code.

In April, 1926, respondent filed her petition in the Superior Court of San Diego County, seeking a writ of mandate compelling her reinstatement as a teacher of the district. After a trial of this action, judgment was rendered for petitioner (respondent here) and the writ of mandate issued. No appeal was taken from this judgment. Many of the points raised by the appellants here, were raised by the pleadings and determined by the findings and judgment in the *mandamus* action, and therefore cannot be considered here, as the two actions are between the same parties and the former judgment was permitted to become final. (*Green* v. *Thornton*, 130 Cal. 482 [62 Pac. 750]; *Horowitz* v. *Speese*, 176 Cal. 685 [169 Pac. 371].)

On January 28, 1928, respondent instituted this action to recover $1840 salary from June 9, 1925, the date of her discharge, to April 21, 1927, the date of her reinstatement, being the amount of salary due her computed at the rate of compensation she received during the last year of her employment under contract with the district. Judgment was rendered for respondent for the amount prayed for and this appeal was taken from the judgment.

After eliminating the issues raised by the pleadings, and which were decided in the *mandamus* action, but two questions are presented upon this appeal. The first is, whether respondent was guilty of laches in bringing this action for her salary, and the second, whether there is any money remaining in the treasury of the district out of which the judgment of respondent can be paid.

■ While the answer of appellants attempts to plead laches, the same defects exist in it that were found in the answer in the case of *La Shells* v. *Hench,* 98 Cal. App. 6 [276 Pac. 377, 379], in which the court said:

"This allegation does not show that the respondents relied upon any of the acts of the petitioner, or that any acts of the petitioner have led to the injury of the respondents or to the injury of the school district of which the respondents are the trustees. Nor is there any allegation in the answer, nor is there anything appearing in the record to show that the respondents would not have acted in the manner in which they acted had it not been for the acts of the petitioner. In other words, there is no showing that the respondents have been misled, to their injury, or the injury of the district, by reason of any failure of the petitioner to bring her action more promptly."

The same defects appear in the evidence, so that the deficiency in the pleading cannot be regarded as being cured at the trial. There is a strong intimation in the record that this defense might be available to appellants under a proper answer if the evidence which they may be able to produce would justify an amendment to their pleadings.

■ In appellants' answer it is alleged that there were no funds belonging to the district out of which respondent's salary could be paid. The evidence showed that there were some funds remaining at the end of each fiscal year during which respondent seeks to recover her salary in this action.

The exact amount of such money remaining in the funds of the district, available to pay such salary, does not appear from the evidence, and the court failed to find upon this issue presented by the answer.

This issue raised by the answer should have been determined by the court in its findings. It was said in the case of *Buck* v. *City of Eureka,* 124 Cal. 61 [56 Pac. 612, 615]: "It would thus appear that the validity of the liability depends upon the facts as to whether there were unappropriated revenues when the liability was incurred; and no judgment should be entered until that fact was established." This issue should have been determined by the trial court and findings should have been made thereon. ▮ It is well settled that the right to have findings made on a material issue is a substantial one and the failure of the trial court to find upon such an issue is prejudicial error. (*Frascona* v. *Los Angeles Ry. Corp.,* 48 Cal. App. 135 [191 Pac. 968].) ▮ Appellants contend that as the evidence shows that all the revenue and funds for the fiscal years 1925–1926 and 1926–1927 were exhausted at the time of the trial of this action in the court below, the district could escape liability on the demand of respondent, regardless of the fact that some money was available at the close of each of the two fiscal years which could have been applied upon teachers' salaries. We cannot agree with this contention. Creditors of a school district are entitled to have all the revenues of a fiscal year applied upon the indebtedness of that year and the district cannot escape liability by a transfer of funds, or the use of such funds to pay the expenses of another fiscal year. (*Bilby* v. *McKenzie,* 112 Cal. 143 [44 Pac. 341]; *Birch* v. *Monroe,* 70 Cal. App. 656 [234 Pac. 125]; *Newton* v. *Brodie,* 107 Cal. App. 512 [290 Pac. 1058].)

Counsel for respondent earnestly contend that the payment of the judgment in this case would not be a violation of section 18 of article XI of the state Constitution even though the payments were made out of the revenues of the fiscal years other than those of 1925–1926 and 1926–1927. They base this contention upon the ground that the action is not founded upon a liability created by contract, but upon a right created by statute. Two lines of authorities are cited in support of their contention. The first is headed by *Lewis* v. *Widber,* 99 Cal. 412 [33 Pac. 1128, 1129], in

which it is held that the payment of the salary of an officer does not come within the provisions of the Constitution under consideration. The second is headed by *City of Long Beach* v. *Lisenby*, 180 Cal. 52 [179 Pac. 198, 199], in which it is held that the payment of a judgment for damages resulting from a tort does not come within the constitutional prohibition.

If respondent's action is to be maintained at all, it must be because of a contract and the provisions of law. The failure of appellants to enter into a contract with respondents to teach in the district schools in the school years 1925–1926 and 1926–1927, brought to life and injected into the case the provisions of the Political Code. Respondent must find her authority for a judgment in the right given her by section 1609 of the Political Code to continue her duties as a permanent teacher in the schools of the district. This right finds its origin in a contract between herself and the board of trustees of the district, together with two years' satisfactory service as a teacher under the terms of her contract or contracts. Therefore the cause of action finds its source, first, in a contract, second, in services satisfactorily performed under the terms of the contract, and, third, in the provisions of the law.

Originally the relation of the district and respondent was that of employer and employee. The provisions of section 1609 of the Political Code merely served to extend the term of the contract of employment by operation of law and did not change the relation of the employer and employee. In reality the suit of respondent is to collect her salary under a contract, the terms of which had been extended by operation of law.

The position of a teacher in the public schools of California is not an office. It is an employment by contract made between the teacher and the district. (*Leymel* v. *Johnson*, 105 Cal. App. 694 [288 Pac. 858].) The becoming a permanent teacher, and the continuation of this employment, is a right given by statute, which right can be terminated or forfeited in the manner provided by law. (*Grigsby* v. *King*, 202 Cal. 299 [260 Pac. 789]; *Saxton* v. *Board of Education*, 206 Cal. 758 [276 Pac. 998].) The relation between the district and the teacher is that of employer and employee and is created by contract which

must be dependent, for its terms and conditions, upon the authority granted the district by law and the limitations placed by law upon its power to contract.

Section 18 of article XI of the Constitution of California provides in part as follows:

"No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose."

This section was construed in the case of *Lewis* v. *Widber, supra*, as follows:

"It is quite apparent, however, that this clause of the Constitution refers only to an indebtedness or liability which one of the municipal bodies mentioned has itself incurred— that is, indebtedness which the municipality has contracted, or a liability resulting, in whole or in part, from some act or conduct of such municipality. Such is the plain meaning of the language used. The clear intent expressed in the said clause was to limit and restrict the power of the municipality as to any indebtedness or liability which it has discretion to incur or not to incur."

This construction was approved in the case of *City of Long Beach* v. *Lisenby, supra*, and it is the settled law in this state. It forms the basis of the two exceptions to the general rule which we have already noted. ■ As offices are generally created by the legislature, or by the people through constitutional or legislative enactments, the governing bodies of municipal or *quasi*-municipal corporations or school districts have nothing to do with creating the liability to pay the salaries of officers, and therefore it is held that the payment of these salaries does not come within the prohibition of the Constitution. The same reasoning applies to liability for torts. ■ In the case before us we must conclude that if the liability of the district to pay respondent her salary was created by a voluntary act of its board of trustees, it comes within the provisions of the Constitution, and she can have applied upon her judgment, only such sums of money available for teachers' salaries as remained not otherwise appropriated for salaries at the end of each of the two fiscal years. Her demand for each

fiscal year must be paid out of the revenues for such fiscal year.

We cannot escape the conclusion that the demand of respondent was created by a voluntary act of the trustees of the district. Her original contract and its renewals constituting the first steps in her right to recover were certainly voluntary acts of the board. Her dismissal without charges filed against her and a hearing was also a voluntary act of the district. Her right to sue under the terms of section 1609 of the Political Code was created by law and was the only involuntary circumstance of the transaction involved. This circumstance, however, and the right to sue, were brought into being and given life by the other voluntary acts we have mentioned. The actual results of the transaction would not have been different had appellants permitted respondent to teach during the two fiscal years in question, without a formal contract, as was the case in *Grigsby* v. *King, supra,* and then failed to pay her because of lack of sufficient revenues. A formal contract of employment was not necessary, and the right to continue as a permanent teacher accrued after two years' satisfactory service. (*Grigsby* v. *King, supra.*)

To hold that the obligation to pay the demand of respondent does not come within the provisions of section 18 of article XI of the Constitution, we would have to conclude that the statutory right to be classified as a permanent teacher, and paid as such, existed under the provisions of the Political Code regardless of the provisions of the Constitution. This section of the Political Code provides three occasions for the dismissal of a permanent teacher. The first is upon charges brought, and after a hearing, and upon any of the grounds specified. The second is upon the decrease of the number of the pupils attending the schools of the district, so that the dismissal of the teacher becomes necessary. The third is upon the discontinuance of a course of instruction in which the teacher is engaged. To these statutory grounds of dismissal we conclude that the Constitution adds another, namely, lack of available revenue during a fiscal year to pay the salary of a teacher. A school district may suffer a loss of revenue just as it may suffer a loss in the number of children attending its schools. The legislature in adopting section 1609 of the Political Code

could not have intended to attempt to make school districts retain and pay teachers when funds were not available for the district so to do. To so hold would be to defeat the very purpose of the framers of the section of the Constitution we are considering, and return to the conditions existing before its adoption, which conditions it was intended to prevent. As was said in *City of Long Beach* v. *Lisenby, supra:*

"The purpose for which the foregoing section of the state Constitution was adopted is somewhat outlined in the debates of the constitutional convention of 1879, to which our attention has been directed, from which it appears that the framers of this particular section of the Constitution stated its object to be to put an end to 'the practice prevalent both in California and in the eastern states, a practice that has grown rapidly of late years, of extravagance and expenditure in engaging in improvements of various kinds which has resulted in an enormous increase of municipal indebtedness.' A yet more definite expression of the purpose of this provision of the Constitution is to be found in the decision of this court in the case of *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641, wherein it is stated: 'The system previously prevailing in some of the municipalities of the state by which liabilities and indebtedness were incurred by them far in excess of their income and revenue for the year in which the same were contracted, thus creating a floating indebtedness which had to be paid out of the income and revenue of future years, and which, in turn, necessitated the carrying forward of other indebtedness, was a fruitful source of municipal extravagance. The evil consequence of that system had been felt by the people at home and witnessed elsewhere. It was to put a stop to all of that, that the constitutional provision in question was adopted.' "

We must conclude that the legislature adopted section 1609 of the Political Code with the provisions of section 18 of article XI of the Constitution in mind. The provisions of the code section are limited by those of the Constitution. As the liability of the district to respondent was created by voluntary acts of the board of trustees, the provisions of the Constitution under consideration apply to the demand of respondent, and the trial court should have found the

amount of funds available that could be applied upon the judgment of the respondent at the end of each of the fiscal years 1925–1926 and 1926–1927. Its failure to so find constitutes error prejudicial to appellants.

Judgment reversed.

Cary, P. J., concurred.

Barnard, J., being absent, did not participate herein.