[No. B176714. Second Dist., Div. Six. Mar. 13, 2006.]

JASON BAUGH et al., Plaintiffs and Respondents, v.
KEITH GARL, Defendant and Appellant.

## Counsel

McCarthy & Kroes, R. Chris Kroes, Thomas M. Fitch and Scott London for Defendant and Appellant.

Price, Postel & Parma, Todd A. Amspoker, Craig A. Parton and Timothy E. Metzinger for Plaintiffs and Respondents.

## Opinion

**GILBERT, P. J.**—Parties litigate their dispute over water rights despite a settlement agreement signed years earlier. The trial court resolves the dispute by enjoining the defendant from tapping into plaintiffs' pipeline that carries water to plaintiffs' property. Because the action is one in equity, defendant is not entitled to a jury trial. Plaintiffs are entitled to attorney fees because they sought to enforce the settlement agreement, which contains an attorney fees clause. We affirm.

### FACTS

Jeanette Keiper, as trustee for her family trust, is the owner of a 20-acre parcel of property near Goleta. Jason and Sylvia Baugh are Keiper's tenants. Keiper's parcel is served by a water line from Strawberry Spring (hereafter pipeline). The pipeline is the sole source of water for the parcel. The pipeline runs through an easement over a parcel owned by Keith Garl.

In 1989, Keiper's predecessors in interest brought an action against Garl alleging he was unlawfully taking water from the pipeline. The parties settled the action in 1990. Under the settlement agreement, Garl agreed not to take any more water from the pipeline. The agreement expressly provided it would bind and inure to the benefit of the parties and their successors and assigns.

In spite of the agreement, Garl resumed taking water from the pipeline. On July 31, 2002, the Baughs and Keiper (hereafter collectively the Baughs) filed the instant action for injunctive relief and damages against Garl. Garl and a neighboring landowner, Gary Anderson, cross-complained asking the trial court to declare they each have a right to one-tenth of all water flowing from Strawberry Spring and the right to use the pipeline. Garl also claimed he was not using the Baughs' pipeline. Instead, he said he was using an independent parallel pipeline.

On the Baughs' motion, the trial court decided to hear the equitable claims first without a jury. After an extensive hearing, the trial court ruled in favor of the Baughs and against Garl and Anderson on the complaint and cross-complaint. The Baughs elected not to pursue damages, and final judgment was entered. The judgment permanently enjoins Garl from connecting to the pipeline or any "offshoot" of the pipeline.

Only Garl appeals.

DISCUSSION

I

Garl contends the trial court erred in denying his request for a jury trial.

■ The California Constitution guarantees the right to a jury trial. (Cal. Const., art. I, § 16.) But the right applies only to a civil action as it existed at common law in 1850, when our Constitution was adopted. (*Martin v. County of Los Angeles* (1996) 51 Cal.App.4th 688, 694 [59 Cal.Rptr.2d 303].) There is no right to a jury trial in an action in equity. (*Ibid.*) In determining whether the action is one triable by jury at common law, the court is not bound by the form of the action. (*Ibid.*) Instead, the court looks to the gist of the action; that is, the nature of the rights involved and the particular facts of the case. (*Ibid.*) Whether the action is legal or equitable is ordinarily to be determined by the type of relief to be afforded. (*Ibid.*)

Garl asserts the gist of the claim is not determined by his cross-complaint. (Citing *Escamilla v. California Ins. Guarantee Assn.* (1983) 150 Cal.App.3d 53 [197 Cal.Rptr. 463].) Assuming that to be true, Garl is not helped.

Here the gist of the Baughs' action was for enforcement of the 1990 settlement agreement, and to prevent interference with their rights as easement holders. It is true that the complaint requests damages and injunctive relief. But the prayer for relief is not conclusive. (*Martin v. County of Los Angeles, supra,* 51 Cal.App.4th at p. 694.) That damages is one of a full range of possible remedies does not guarantee a right to a jury trial. (*Ibid.*) The Baughs ultimately waived their claim for damages, and the judgment only grants equitable relief. The gist of the action is in equity.

Nor does Code of Civil Procedure section 592 mandate a jury trial.[1] That section provides in part: "In actions for the recovery of specific, real, or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries, an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this Code." Here the Baughs waived their claim for damages for breach of contract or injuries, and did not seek recovery of specific real or personal property.

Finally, Garl's reliance on *Arciero Ranches v. Meza* (1993) 17 Cal.App.4th 114 [21 Cal.Rptr.2d 127], is misplaced. There the question was whether a party claiming to have acquired a prescriptive easement is entitled to a jury trial. The court determined that at common law an equitable action to quiet title to a nonpossessory interest, such as an easement, was generally not available. (*Id.* at pp. 124–125.) The court stated that where the right to an easement is in substantial dispute, the right must be established by an action at law before an injunction will issue. (*Id.* at p. 124.) The court also stated, however, that where the right to an easement is clear, it need not be established by an action at law as a prerequisite to an injunction. (*Ibid.*)

Here there is no substantial dispute that the Baughs have a right to an easement. Thus no action at law was necessary as a prerequisite to an injunction.

Contrary to Garl's assertion, the Baughs did not admit that the gist of the action is one at law. The Baughs' counsel stated in his trial brief: "In essence this is a simple legal issue concerning Garl's compliance with the Settlement Agreement." Counsel merely stated that the case presented issues that could be decided as a matter of law by the trial court without a jury. This does not mean that the Baughs' case was one at law.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

## II

Garl contends the trial court erred in awarding attorney fees to the Baughs.

The 1990 settlement agreement provides for an award of fees to the prevailing party in "any action . . . commenced to enforce or interpret any of the provisions of this Settlement Agreement . . . ." The trial court found that Garl breached the settlement agreement by tapping into the Baughs' pipeline. The court awarded the Baughs $200,000 in attorney fees.

Garl argues the award of fees was improper because the Baughs' equitable action was not to "enforce or interpret" any of the provisions of the settlement agreement. He points out that a party is not entitled to recover fees except where authorized by statute or agreement. (Citing *Estate of Gerber* (1977) 73 Cal.App.3d 96, 117 [140 Cal.Rptr. 577].) He also points out an attorney fees clause that is limited to actions to enforce the contract will not support an award of fees for tort causes of action. (Citing *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775 [94 Cal.Rptr.2d 597, 996 P.2d 699].)

But here, as the trial court found, the Baughs' action was to enforce the settlement agreement. In the settlement agreement, Garl agreed to "cease and refrain . . . [f]rom installing any pipe, connection, fitting, or other device for the purpose of taking water from the Pipeline; and . . . [f]rom taking water from the Pipeline." The Baughs brought and prosecuted this action because Garl did just that.

Garl argues attorney fees are not recoverable in injunction cases. He cites *Santisas v. Goodin* (1998) 17 Cal.4th 599, 615 [71 Cal.Rptr.2d 830, 951 P.2d 399], for the proposition that Civil Code section 1717 applies only to actions that contain at least one contract claim. Garl's argument appears to confuse cause of action with remedy. Here the Baughs claimed that Garl breached the settlement agreement. That the remedy was specific enforcement of the contract, instead of damages, does not bar an award of fees in an action to enforce the contract. (See *Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1246 [34 Cal.Rptr.2d 155] [contract provision for attorney fees in an action to enforce the contract required an award of fees under Civ. Code, § 1717 where the only remedy was declaratory relief].)

Garl's reliance on *Grigsby v. King* (1927) 202 Cal. 299 [260 P. 789], is misplaced. There a school teacher brought an action to enjoin the school board from denying her status as a permanent teacher. The trial court refused an

injunction, in part, because an injunction is not available for breach of a contract for personal services. Our Supreme Court determined an injunction should issue, not based on contract, but because the school board exceeded its statutory authority. The court noted that viewing the matter as a question of the board's statutory authority disposes of the objection that an injunction is not available as a remedy in an action "to enforce a contract for personal services . . . ." (*Id.* at p. 307.)

*Grigsby* has nothing to do with this case. This case does not involve enforcement of a personal services contract. Nor does it stand for the proposition that an action for an injunction is not an action to enforce the contract. It is. That is why attorney fees are available.

Garl cites the concurring opinion of Justice Carter in *LeFave v. Dimond* (1956) 46 Cal.2d 868, 871 [299 P.2d 858], for the proposition that "attorney[] fees are not allowed in injunction cases . . . ." The court there was concerned with whether fees are a proper element of damages under claim and delivery statutes. The court was not concerned with an award of fees pursuant to an attorney fees clause.

It is true that the Baughs' complaint contained tort causes of action and a cause of action to enforce the contract. But Garl does not argue that the award should be apportioned between the contract and tort causes of action. All the causes of action in the complaint relate to the same acts.

### III

Garl contends the trial court erred by not disqualifying the Baughs' counsel.

Garl and Anderson made a pretrial motion to disqualify the entire firm of which the Baughs' trial counsel are members. In support of the motion, Anderson declared that Chip Wullbrandt, a partner of the Baughs' trial counsel, initiated a conversation with him while they were on a social horseback riding trip. According to Anderson, Wullbrandt told him he was peripherally involved in the litigation. Wullbrandt asked about Anderson's involvement in the case, and said the case was going to settle but that Garl had prevented it. Wullbrandt also called Garl a liar, and said Garl had a long history of problems with the property. Anderson said he was so upset by Wullbrandt's comments that he left the trip early.

In opposition to the motion, Wullbrandt declared that it was Anderson who initiated the discussion about the case. Wullbrandt informed him that his firm represented plaintiffs, and that he would not be able to discuss the case in any manner. Wullbrandt denied he told Anderson Garl had prevented a settlement, and that he called Garl a liar. Wullbrandt also denied he told Anderson he was peripherally involved in the case. Wullbrandt had talked to Garl in 1998 before the case was filed, but has had "very little contact" with the case outside of that.

In denying the motion, the trial court refused to hold a special hearing to determine the veracity of Anderson and Wullbrandt. Instead, the court stated the decision turns on what is said and not said in the declarations. The court concluded Wullbrandt received no confidential information; the conversation as related by Anderson will not have an effect on the outcome of the litigation; there will be no continuing effect on the proceedings; and there is no real likelihood of prejudice.

California Rules of Professional Conduct, rule 2-100, provides in part: "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

Garl argues the undisputed facts show the misconduct took place. The facts are anything but undisputed. Wullbrandt denied any improper communication with Anderson. Where, as here, the trial court did not expressly make a finding of credibility, we must presume that the court found the facts that support the order. (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451, fn. 4 [268 Cal.Rptr. 202].) Thus we must presume the court found Wullbrandt's declaration credible. Wullbrandt's declaration reveals no misconduct.

■ In any event, even if the trial court had believed Anderson's declaration, it would not compel disqualification of counsel. The purpose of disqualification is not to punish a transgression of professional ethics. (*Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607 [168 Cal.Rptr. 196].) Disqualification is only justified where the misconduct will have a "continuing effect" on judicial proceedings. (*Ibid.*)

Here, the trial court found the conversation, as related by Anderson, will have no continuing effect on the proceedings. Garl points to nothing that would compel the trial court to conclude otherwise. Contrary to Garl's

argument, the trial court used the appropriate standard for determining disqualification. (*Chronometrics, Inc. v. Sysgen, Inc.*, *supra*, 110 Cal.App.3d at p. 607.)

## IV

Garl contends the trial court erred by not ordering a new trial after discovering the referee's conflict of interest.

The trial court originally appointed Kevin McIvers as discovery referee by agreement of the parties. McIvers's original appointment was to oversee the physical inspection of the pipeline on Garl's land. Later, the Baughs made a motion to expand McIvers's authority to other discovery matters. The trial court granted the motion over Garl's objection that it would add unnecessary expense to the litigation.

After the trial court granted the motion to expand McIvers's authority, Garl filed a peremptory challenge to McIvers under section 170.6. The trial court denied the motion on the ground that Garl had previously used his one challenge under section 170.6 to disqualify a trial court judge. Anderson also brought a section 170.6 motion against McIvers. In support of the motion, Anderson declared that McIvers is prejudiced against him because McIvers has met with Jason Baugh and has developed a professional relationship with him. The Baughs objected that only one section 170.6 motion may be made for each side, and that Garl's and Anderson's interests are not substantially adverse. The trial court denied Anderson's section 170.6 motion.

The Baughs called McIvers as a witness in the rebuttal phase of the trial. On cross-examination, McIvers testified that the law firm in which he was a partner at the time of the 1990 settlement agreement represented the parties opposing Garl in that litigation. McIvers said he was unaware of that until Garl's counsel mentioned it to him. McIvers said he thought he learned of the conflict from Garl's counsel after he was appointed but prior to the time he issued any discovery reports.

In his opening brief, Garl does not appear to challenge the trial court's denial of his and Anderson's section 170.6 motions. Instead, he appears to argue the trial court should have disqualified McIvers under section 170.1, subdivision (a)(2). That subdivision mandates disqualification where a judge

has served as a lawyer for any party in the proceeding. (*Ibid.*) Garl also argues the trial court should have declared a mistrial as soon as it learned of the conflict.

But Garl fails to point to any motion to disqualify McIvers under section 170.1; nor does he point to any motion for a mistrial. The record shows Garl and Anderson were aware of the facts long before trial. Points not raised in the trial court may not be raised for the first time on appeal. (*Degnan v. Morrow* (1969) 2 Cal.App.3d 358, 366 [82 Cal.Rptr. 557].)

■ Garl appears to raise his challenge to the trial court's denial of the section 170.6 motions for the first time in his reply brief. Ordinarily, contentions not raised in appellant's opening brief are deemed waived. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 616, pp. 647–648.) In any event, Garl's challenge to the denial of the section 170.6 motions has no merit. A discovery referee may be peremptorily challenged under section 170.6. (§ 639, subd. (b).) But section 170.6, subdivision (a)(3), provides in part: "[N]o party or attorney shall be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding."

Here Garl had previously filed a section 170.6 motion to disqualify a trial court judge. Moreover, the trial court could reasonably conclude Garl and Anderson were on the same side of the litigation. They jointly filed their cross-complaint and were represented by the same counsel.

Garl claims the Baughs are estopped from asserting that Garl and Anderson have a unity of interest. Garl's estoppel argument is based on a motion the Baughs made to sever Anderson's action from Garl's. The Baughs made the motion because Anderson needed surgery and might not be available for trial. In the motion to sever, the Baughs argued Garl is estopped from claiming he and Anderson have a unity of interest because they had previously argued in their section 170.6 motion that they had no unity of interest.

■ A party may be estopped from asserting inconsistent positions. (See *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 [70 Cal.Rptr.2d 96].) But there is no inconsistency in the Baughs' argument that Garl is estopped from claiming a unity of interest, and in their argument that there is in fact a unity of interest. The Baughs are not estopped.

V

Garl contends the trial court erred when it denied his motion for nonsuit and directed verdict.

██ Garl's motion was based on section 338, subdivision (b), providing a three-year limitations period in which to bring an "action for trespass upon or injury to real property." Garl claims the Baughs were aware or had suspicions that he had trespassed on their property between 1990 and 1995. The Baughs filed the instant action on July 31, 2002. Garl cites *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110–1111 [245 Cal.Rptr. 658, 751 P.2d 923], for the proposition that a mere suspicion of wrongdoing is sufficient to begin the running of the limitations period.

Where, as here, a trespass is continuing, but not necessarily permanent, the statute does not bar an action until three years after the last act of trespass. (See 3 Witkin, Cal. Procedure (4th ed. 1997) Actions, § 552, p. 703.) Here Garl continued the trespass, even after trial.

██ Garl relies on the rule that where the trespass consists of a physical entry and taking possession of lands under circumstances that indicate the intention that the trespass will be permanent, the statute begins to run on entry. (Citing *Robinson v. Southern Cal. Ry. Co.* (1900) 129 Cal. 8, 11 [61 P. 947].) But that rule applies to trespass by structures that are of durable character and are evidently intended to last indefinitely, such as a building or railroad track. (See 3 Witkin, Cal. Procedure, *supra*, Actions, § 549, pp. 698–699.) It does not apply to the connection of a waterline, which can be disconnected with relative ease. Here because the trespass was of a continuing nature, the statute of limitations did not bar the Baughs' action.

██ Moreover, Garl's opening brief ignores that the Baughs' action was also on the settlement agreement. Where a contract is still executory, the promissee is not bound to treat the contract as abandoned on the first breach or any particular breach, and the statute of limitations does not begin to run as long as the promissee elects to rely on the contract. (*Union Sugar Co. v. Hollister Estate Co.* (1935) 3 Cal.2d 740, 745–746 [47 P.2d 273].) Here the settlement agreement is still executory, it has no expiration date. The Baughs were not required to bring an action on the first breach or any particular breach. Thus their action on the contract is not barred by the statute of limitations.

## VI

Finally, Garl contends the trial court showed bias when it found neither Garl nor any of his witnesses to be credible. We need not dwell on this groundless contention. Suffice it to say, Garl points to nothing in his testimony or that of any of his witnesses that would compel the trial court to believe him or his witnesses.

The judgment is affirmed. Costs are awarded to respondents.

Yegan, J., and Coffee, J., concurred.