Filed 7/18/25  Wykowski v. Chimienti CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HENRY G. WYKOWSKI,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>FRANK CHIMIENTI,<br><br>　　　Defendant and Appellant. | B333654<br><br>(Los Angeles County<br>Super. Ct. No. BC709545) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed.

Law Offices of J. David Nick and J. David Nick for Defendant and Appellant.

Wykowski Law and Daniel V. Weston for Plaintiff and Respondent.

# I.    INTRODUCTION

Defendant Frank Chimienti appeals from a judgment following a court trial.  Plaintiff Henry G. Wykowski sued Chimienti for malicious prosecution, alleging he initiated a malicious lawsuit against Wykowski for purported legal malpractice.  The trial court found Chimienti liable and awarded Wykowski $10,000 for out-of-pocket expenses, $25,000 for emotional distress, and $129,461.09 for money paid by Wykowski's insurance carrier for his legal representation.

Chimienti contends the trial court erred by excluding expert witness testimony.  He also argues there was insufficient evidence to support the judgment.  Finally, Chimienti asserts the trial court erred in awarding damages.  We affirm.[1]

# II.    BACKGROUND[2]

A.    *Wykowski's Legal Representation of Sosa*

Daniel Sosa was the president and owner of Mid City Cannabis Club, Inc., doing business as La Brea Collective (Mid

---

[1]    We deny Wykowski's motion to dismiss the appeal.

[2]    "In accordance with the substantial evidence standard of review, we recite the facts established by the record viewed in the light most favorable to the judgment, giving [the respondent] the benefit of every reasonable inference and resolving any conflicts in the evidence in support of the judgment. [Citation.]" (*Los Angeles Unified School Dist. v. Casaola* (2010) 187 Cal.App.4th 189, 194, fn. 1.)

City). Chimienti, Sosa's friend and office mate, served as legal counsel for Sosa from 2010 until at least April 2023.

In March 2011, the IRS audited Mid City and Sosa. On January 27, 2012, the IRS issued an Income Tax Discrepancy Adjustment to Sosa, stating that he owed approximately $35,000 for tax years 2007 to 2009 (January 2012 Demand Letter).[3] The IRS also notified Sosa that Mid City owed taxes.

In March 2012, Chimienti engaged Michael Zipperstein, a certified public accountant, to act as Sosa's accountant. Zipperstein, in turn, referred Sosa to Wykowski, a tax lawyer who specialized in advising cannabis companies.

On October 24, 2012, the IRS issued Sosa a Notice of Deficiency stating that he owed approximately $135,000 in taxes, and a Notice of Deficiency against Mid City stating that it owed $982,846.96 in taxes.

On November 26, 2012, Chimienti sent Wykowski an e-mail stating, "Please see the attached NOD for Daniel Sosa, personally, and for Mid City Cannabis Club, Inc. . . . ." Chimienti attached to the e-mail the two October 24, 2012, Notices of Deficiency. Chimienti did not, however, send Wykowski the January 2012 Demand Letter.

In the same November 26, 2012, e-mail, Chimienti asked Wykowski to contact him about "a referral fee for this matter." Some time after sending this e-mail, Chimienti asked Wykowski for payment of a referral fee. Wykowski refused. (See Rules Prof. Conduct, rule 7.2(b) [lawyer may not "compensate, promise or give anything of value" to another person, including a lawyer, for

---

[3] On our own motion, we judicially notice the record in the prior appeal. (*Wykowski v. Chimienti* (Oct. 28, 2019, B293271) [nonpub. opn.].)

recommending or securing the referral of business to a lawyer or law firm, except upon certain conditions].)

In January 2013, Sosa, individually and for Mid City, entered into an Attorney-Client Fee Agreement (Agreement) with Wykowski. The Agreement defined the "Client" as "Daniel Sosa, individually, and Mid City Cannabis Club Inc., dba La Brea Collective." Chimienti acted as the point of contact between the clients and Wykowski and told Wykowski that he would "relay everything to . . . Sosa."

Wykowski filed petitions on behalf of Sosa and Mid City in United States Tax Court, challenging the two October 24, 2012, Notices of Deficiency. On January 21, 2013, Wykowski sent Chimienti an e-mail explaining that he had filed the petitions and "I followed what we agreed to and for [Sosa's] personal taxes only challenged the erroneous capital gains."

In December 2013, Wykowski contacted the IRS Appeals Office to discuss a possible settlement for Mid City and Sosa. After meeting with an appeals officer, Wykowski informed Sosa and Chimienti of the proposed settlement terms.

At the end of 2013 or early 2014, the IRS informed Wykowski that it intended to move to dismiss Mid City's petition because Mid City's corporate status had been suspended by the Secretary of State for failure to pay taxes. Wykowski had previously been unaware of Mid City's suspended status. The IRS agreed, however, that it would abide by the terms of the settlement offer until the United States Tax Court ruled on the motion to dismiss.

On January 2, 2014, Wykowski informed Sosa and Chimienti that the IRS had moved to dismiss Mid City's petition because of its suspended status. Chimienti worked to remove the

4

suspension of Mid City's corporate status and asked Wykowski to oppose the IRS motion to dismiss. Wykowski complied.

On or about February 2014, Chimienti and Zipperstein advised Wykowski that Sosa did "not wish to contest the deficiency asserted against [him] individually" because the IRS's calculation of taxes due was more favorable than Zipperstein's calculation of what Sosa owed.

In March 2014, Sosa and Chimienti authorized Wykowski to settle with the IRS. The United States Tax Court subsequently denied the IRS's motion to dismiss Mid City's petition.

After the case was settled, Wykowski billed Sosa for the unpaid invoices for his work for "La Brea Collective," which included services for both Mid City and Sosa. Chimienti responded with two e-mails stating that Sosa refused to pay. In the first e-mail, dated November 6, 2014, Chimienti stated that "[a]s far as I am concerned the only thing that you did for this client was to ruin his chances to have a shot at appealing this case by failing to advise the client to get the corporation off suspension . . . . Now you are coming at the client with a $32,000 bill? I propose that you squash the entire bill and chalk it up to a lesson learned concerning the appeals process." In a second e-mail, dated February 6, 2015, addressed to Wykowski's assistant, Chimienti wrote: "I have already advised [Wykowski] that the client is not going to pay the remainder of this bill and advised him as to why the client is not paying the bill. . . . [¶] . . . [¶] Further, should collection efforts continue concerning this matter I am advising the client to retain counsel to file a malpractice claim. [¶] If [Wykowski] would like to send over a mutual release—my client forgoing his claims and the firm forgiving any

5

amounts it claims are due and owing for work done on this matter, I will pass it on to the client for review."

On April 16, 2015, Chimienti sent an e-mail to Wykowski and Sosa, stating: "I recently learned the reason the IRS assessed an additional over 300,000 in income to . . . Sosa's personal taxes from 2009 was that . . . Wykowski agreed to such an assessment at the time the case for Mid City was settled. This was very confounding to me because . . . Wykowski did not have any authority to deal with . . . Sosa's personal taxes and was never retained by . . . Sosa to handle such matters."

B.    *Legal Malpractice Suit*

Chimienti then had discussions with Sosa about filing a malpractice claim against Wykowski and Zipperstein, and included the filing of a lawsuit as an action item on a whiteboard that he maintained in Sosa's office. Chimienti contacted various malpractice attorneys to represent Sosa and eventually "found" Matthew Mahoney to represent Sosa. Chimienti provided Mahoney with his files and other information about the malpractice lawsuit. Chimienti also provided the "initial statement" to Mahoney.

On March 9, 2016, Sosa, represented by Mahoney, filed a malpractice action against Zipperstein, Zipperstein's related entities, Wykowski, and Wykowski's law firm. The first cause of action (the Mid City cause of action) was filed by Mid City against Zipperstein and Zipperstein's related entities and alleged that the defendants "negligently and carelessly performed their duties for Mid City." The Mid City cause of action further alleged that Zipperstein and his related entities "had a duty to ensure

6

Mid City was not in a state of suspension before filing a petition to challenge the assessment of a deficiency, and that all relevant taxes and fees were paid by Mid City."

The second cause of action (the Sosa cause of action) was filed by Sosa against "all defendants," including Zipperstein, Wykowski, and Wykowski's law firm and alleged defendants "failed to exercise reasonable care, skill, and diligence in performing their services for . . . Sosa and were negligent in their representation of . . . Sosa." The Sosa cause of action alleged that in February 2014, defendants "incorrectly informed . . . Sosa that if he did not challenge the IRS's position, his individual tax liability would be approximately $35,000, as reflected in the [January 2012 Demand Letter]. They further informed . . . Sosa that it would be unlikely that he would achieve a better result if he continued to challenge the deficiency assessment." Based on defendants' allegedly negligent advice, "Sosa believed he would owe approximately $35,000 to the IRS and therefore agreed not to continue contesting the assessment of tax liability. Accordingly, in February 2014, . . . Sosa instructed Wykowski to discontinue any efforts to challenge the deficiency that had been assessed by the IRS against [him]."[4]

On December 14, 2017, the trial court granted Wykowski's motion for summary judgment on the grounds that Sosa's claim was time-barred and that Sosa had presented no evidence that Wykowski breached a duty to Sosa. Among other things, the trial court determined: "[Wykowski] has demonstrated that he had no way of knowing that . . . Sosa had the subjective impression that

---

[4] As we explain above, Chimienti never sent the January 2012 Demand Letter to Wykowski, who first learned of its existence when Sosa filed the malpractice complaint.

Sosa's tax liability was $35,000. When he was engaged, Wykowski was provided by Sosa's accountant Zipperstein and Sosa's business attorney Chimienti on November 2012, a scanned copy of the October 2012 [Notice of Deficiency]. He was never provided with the [January 2012 Demand Letter]. [¶] . . . Chimienti admitted at his deposition that he received an email from Wykowski indicating that Wykowski had filed a petition challenging Sosa's personal taxes and challenged only the erroneous capital gains. Those capital gains were the reason for the amended amount and should have alerted Chimienti that a different amount was being sought. Chimienti admits that if he'd read the email, which he admits he did not, it would have rung a bell that something was amiss and Chimienti would have asked to look at the petition. This appears to be Chimienti's mistake rather than Wykowski's mistake."

On January 2, 2018, judgment was entered in Wykowski's favor.

C.      *Malicious Prosecution Suit*

On June 12, 2018, Wykowski filed a complaint for malicious prosecution against Chimienti and Sosa.

On February 13, 2020, Wykowski reached a settlement agreement with Sosa and dismissed his claim against him.

D.      *Motion in Limine*

On March 21, 2023, Wykowski filed a motion in limine to exclude the testimony of Michael Fahmy, Chimienti's designated

8

expert witness, on the grounds, among others, that Fahmy's proffered testimony was not relevant to the instant proceedings.

On March 27, 2023, Chimienti filed his opposition to the motion in limine. Chimienti proffered that Fahmy would render an opinion on "the methods used by the Federal Government[ ] to collect taxes from corporations that have not filed or paid their taxes . . . ." (Boldface omitted.) Chimienti also proffered that Fahmy would opine that it was negligent for a tax attorney to fail to check on the suspension status of a corporate client and that "Wykowski was negligent in his handling of . . . Sosa's corporate tax matters . . . ."

On April 4, 2023, the trial court heard argument on the motion in limine. Following argument, the court granted Wykowski's motion, finding Fahmy's testimony to be not relevant. The court stated that Sosa's malpractice action against Wykowski concerned Wykowski's handling of Sosa's individual tax issues rather than his handling of Mid City's tax issues.

E. *Statement of Decision and Judgment*

The parties proceeded to a bench trial that began on April 4, 2023. Chimienti, Sosa, and Wykowski testified as witnesses.

On May 22, 2023, the trial court issued its proposed statement of decision. Following additional briefing, the court issued its final statement of decision on July 24, 2023. The court described the allegation in the malpractice action, which "alleged that Wykowski informed Sosa that if Sosa did not challenge the IRS's audit, his individual tax liability would be approximately $35,000, as reflected in the [January 2012 Demand Letter]." The

9

statement of decision also recited the allegations in the complaint that, based on Wykowski's advice, Sosa "'believed he would owe approximately $35,000 to the IRS and therefore agreed not to continue contesting the assessment of tax liability,'" and that Wykowski allegedly did not discuss the amount the IRS actually sought. The court continued: "It is not disputed that these allegations in the Malpractice Action were false. The allegations appear to have been drawn from Chimienti's own errors and misunderstanding. For example, Chimienti testified that he neglected to read the October Notice of Deficiency before forwarding it to Wykowski on November 26, 2012 [citation], and that he was not aware of the $135,000 assessment against Sosa individually until the litigation of the Malpractice Action. The court notes that the IRS sent the October 2012 Notices of Deficiency directly to Sosa. [Citation.]"

The trial court awarded Wykowski $25,000 for emotional distress, $10,000 for money that he personally paid to his insurance company for his defense in the malpractice action, and $129,461.09 for the attorney fees paid by his insurance for his legal representation.

On August 15, 2023, the trial court entered judgment in favor of Wykowski against Chimienti. Chimienti timely appealed.

## III. DISCUSSION

A. *Exclusion of Expert Witness Testimony*

Chimienti contends that the trial court erred by excluding Fahmy's testimony. "'A trial court's exercise of discretion in

10

admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446– 447.) "This is particularly so with respect to rulings that turn on the relevance of the proffered evidence. [Citation.]" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.)

Chimienti contends that Fahmy's testimony was relevant because Wykowski's handling of Sosa and Mid City's taxes was "a singular subject." According to Chimienti, Fahmy would have testified that a reasonable tax attorney would have taken affirmative steps to investigate Mid City's suspended status, which would have supported a finding that Chimienti had probable cause to institute a malpractice action against Wykowski. We find no error.

Evidence Code section 210 defines relevant evidence as "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." We will assume, without deciding, that expert testimony about a lawyer's duty of care was not prohibited, as a matter of law, at trial. (But see *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884 (*Sheldon Appel Co.*) [trial court erred when it permitted attorneys to be called as expert witnesses to give their opinions as to whether a reasonable attorney would conclude that the claims advanced in the prior action were tenable because such a matter is "'within the province of the court to decide'"].) Even if Fahmy's testimony was relevant to whether the *Mid City* cause of action was objectively reasonable, it was not relevant to the question of whether the

11

*Sosa* cause of action was objectively reasonable and that was the only claim filed against Wykowski. Accordingly, the trial court did not err by excluding Fahmy's testimony.

B.      *Sufficiency of the Evidence*

Chimienti next contends that the judgment is not supported by substantial evidence. "In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

"[I]n order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].'" (*Sheldon Appel Co., supra*, 47 Cal.3d at p. 871.)[5]

"Liability for malicious prosecution is not limited to one who initiates an action. A person who did not file a complaint may be liable for malicious prosecution if he or she 'instigated'

---

[5]      Chimienti does not dispute there was sufficient evidence for finding malice.

the suit or 'participated in it at a later time.'  (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 497, pp. 730–731; see *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1131, fn. 11 ['A person who is injured by groundless litigation may seek compensation from any person who procures or is actively instrumental in putting the litigation in motion or participates after the institution of the action'].)"  (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 873 (*Nunez*).)

### 1.    Instigation of Lawsuit

According to Chimienti, the trial court's finding that the allegations in the malpractice suit "came from Chimienti" (italics omitted) was not supported by substantial evidence because the court "had zero evidence explaining how the allegations reached Mahoney" and thus the court's finding that Chimienti instigated the lawsuit was based on speculation.  We disagree.

The record supports the trial court's finding that Chimienti instigated the malpractice lawsuit.  Indeed, it was Chimienti who warned Wykowski, by e-mail, that if Wykowski continued to collect his fees, Chimienti would "advis[e] the client to retain counsel to file a malpractice claim."  Chimienti also admitted that he sought out counsel to represent Sosa in the malpractice claim, "found" Mahoney to file the lawsuit, and provided Mahoney with the records and "initial statement" for the lawsuit.  Although Sosa testified that Chimienti did not participate in the decision to file the malpractice suit, Sosa also admitted that he prepared for his testimony at trial by reviewing an e-mail that had been sent to him by Chimienti's lawyer.  Based on this, the court gave "[Sosa's] testimony little, if any, weight."  Further, while

13

Chimienti denied advising Sosa to pursue a malpractice action against Wykowski in connection with his services to Sosa, the court did "not find Chimienti credible on this issue." "[W]e defer to the trier of fact on issues of credibility." (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) On this record, substantial evidence supports the trial court's finding that Chimienti was "'actively instrumental in putting the litigation in motion.'" (*Nunez, supra*, 241 Cal.App.4th at p. 873.)

### 2. Knowingly False Statements

Chimienti next contends the trial court erred in finding that he instigated a malicious prosecution based on his negligent transmission of evidence, because, in his view, the theory of instigation liability requires the transmission of knowingly false information. According to Chimienti, the court erroneously found that he was merely negligent in providing information to Mahoney, and cites in support that portion of the court's statement of decision that the allegations in the malpractice action "appear to have been drawn from Chimienti's own errors and misunderstanding," that he had testified that he "neglected" to read certain documents, and that he "was not aware" of the October 2012 Notice of Deficiency assessment against Sosa until the malpractice action litigation commenced.

We will assume, without deciding, that a plaintiff who alleges a malicious prosecution claim, premised on the instigation of a civil lawsuit, must prove that a defendant provided knowingly false statements to the party that filed the complaint. (See *Rupp v. Summerfield* (1958) 161 Cal.App.2d 657, 664 [finding that the trial court erred in delivering jury instructions

14

in a malicious criminal prosecution action premised on the giving of false information to the police because "[a]s an abstract statement of the law, the word 'knowingly' should have been included in the instruction . . ."].)

We disagree with Chimienti's characterization of the excerpts from the statement of decision as supporting a finding that Chimienti acted negligently, but not knowingly, when he provided false information to Mahoney for the malpractice action. In the portions of the statement of decision cited by Chimienti, the trial court recited Chimienti's testimony that he "neglected to read the October Notice of Deficiency" and that he "was not aware" of Sosa's $135,000 tax liability. Further, the court's statement that Chimienti's "errors and misunderstanding" caused the filing of the malpractice suit is not inconsistent with a finding that Chimienti provided knowingly false information to Mahoney and Sosa. Indeed, because Chimienti did not object to the statement of decision regarding what facts were known to him, the doctrine of implied findings applies. "'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.] Specifically, '[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.' [Citation.]" (*Thompson, supra*, 6 Cal.App.5th at p. 981.) This includes implied findings regarding credibility. (*Baugh v. Garl* (2007) 137 Cal.App.4th 737, 744; see also *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043 ["A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so"].)

15

As discussed, the malpractice complaint included false allegations that Wykowski advised Sosa that his individual tax liability was approximately $35,000 based on the January 2012 Demand Letter. Chimienti, however, never sent the January 2012 Demand Letter to Wykowski and Wykowski therefore did not learn about the demand letter until he was served with the malpractice complaint. Thus, the record supports a finding that Chimienti knew the information that he provided to Mahoney, and which appeared in the malpractice complaint, was false.

3.    Probable Cause

Chimienti next contends that there is no substantial evidence that the initial malpractice lawsuit was initiated without probable cause. According to Chimienti, he had "'a *reasonable belief in the possibility* of [Sosa's] suit being successful.'" Substantial evidence supports the trial court's contrary finding.

"The probable cause element is evaluated 'objectively' by asking 'whether any reasonable attorney would have thought the claim [legally and factually] tenable.' [Citations.] A prior action was not initiated without probable cause merely because it was ultimately found to lack merit; it was initiated without probable cause only if '*all* reasonable lawyers' would 'agree' that the suit, at the time of filing, was 'totally and completely without merit.' [Citation.] This objective assessment is necessarily made using 'the facts known to the defendant' 'at the time the suit was filed.' [Citations.] Although the objective question of tenability is always a 'question of law' for the court to decide [citations], the question of what facts were known at the time of filing is a

16

'question of fact' which, if disputed, is for the [factfinder] to decide and, critically, to decide *before* the court makes its objective determination of tenability.  [Citations.]" (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 537–538.)

The malpractice action alleged that Wykowski "incorrectly informed . . . Sosa that if he did not challenge the IRS's position, his individual tax liability would be approximately $35,000 as reflected in the [January 2012 Demand Letter]."  The complaint further alleged that Sosa, based on Wykowski's negligent advice, believed that his tax liability would be $35,000 and did not know that he would instead owe approximately $135,000.  Although Chimienti testified that he was unaware that he never sent the January 2012 Demand Letter to Wykowski and failed to read the October 2012 Notices of Deficiency before sending them to Wykowski, the trial court impliedly found Chimienti's testimony not credible on this issue.  Indeed, Chimienti testified that he, Sosa, and Zipperstein had a discussion regarding the Notices of Deficiency, and he was aware that if Sosa did not timely respond, the amount listed in the notice would be assessed.

We agree with the trial court's legal conclusion that no reasonable attorney, given the facts known to Chimienti, would have found the malpractice action against Wykowski to be tenable.  To prevail on the legal malpractice claim, Sosa would have to demonstrate, among other things, that Wykowski breached his duty by failing to advise Sosa about the January 2012 Demand Letter or the October 2012 Notices of Deficiency and settling with the IRS without consulting Sosa.  (See *O'Shea v. Lindenberg* (2021) 64 Cal.App.5th 228, 235 [in legal malpractice case, plaintiff must demonstrate breach of duty].)  The record demonstrates that Chimienti never sent Wykowski

17

the January 2012 Demand Letter and thus Wykowski could not have informed Sosa that he could settle with the IRS for approximately $35,000. And, the record supports a finding that Chimienti told Wykowski that he was authorized to settle Sosa's personal tax liability with the IRS. Accordingly, we find no error as to the finding of lack of probable cause.

### 4. Causation

Chimienti argues that attorney Mahoney had the "legal duty" to investigate the merits of the malpractice lawsuit independently, citing Code of Civil Procedure section 128.7, subdivision (b).[6] Chimienti contends that Mahoney's failure to act therefore served to "break the chain of causation." We reject this argument.

"For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.) "A separate investigation that is independent protects a complainant from liability for malicious prosecution." (See *Lugo v. Pixior, LLC* (2024) 101 Cal.App.5th 511, 515 [finding that because police investigation was independent, prosecutor's

---

[6] An attorney signing a pleading certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] . . . [¶] (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." (Code Civ. Proc., § 128.7, subd. (b)(3).)

18

decision to prosecute malicious prosecution plaintiff "was a superseding cause that insulated [defendant] from liability, as a matter of law"].)

An attorney generally has no obligation to investigate the information provided by the client before filing suit. (See *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 223 ["In general, a lawyer 'is entitled to rely on information provided by the client'"].) And, as discussed, substantial evidence supports the trial court's finding that Chimienti was "'actively instrumental in putting the litigation in motion.'" (*Nunez, supra*, 241 Cal.App.4th at p. 873.) Accordingly, substantial evidence supports a finding that Chimienti caused Wykowski damages.

## C.    *Applicability of Collateral Source Rule*

Defendant also argues that the trial court erred by applying the collateral source rule to award Wykowski $129,461.09 as damages for the attorney fees paid by his insurance company for his legal representation.

"[T]he measure of compensatory damages for the malicious prosecution of a civil action includes attorney fees and court costs for defending the prior action . . . ." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 59, fn. omitted.) "'"Whether a plaintiff 'is entitled to a particular measure of damages is a question of law subject to de novo review. [Citations.] The amount of damages, on the other hand, is a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence.'"' [Citation.]" (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1050.)

19

"Compensatory damages are moneys paid to compensate a person who 'suffers detriment from the unlawful act or omission of another' (Civ. Code, § 3281), and the measure of damages generally recoverable in tort is 'the amount which will compensate for all the detriment proximately caused' by the tort (*id.*, § 3333). Civil Code section 3282, in turn, defines 'detriment' as 'a loss or harm suffered in person or property.' . . . [¶] When, as here, the costs . . . are paid in whole or in part by a third party unconnected to the defendant, the collateral source rule is implicated. The collateral source rule states that 'if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.' [Citation.] Put another way, 'Payments made to or benefits conferred on the injured party from other sources [(i.e., those unconnected to the defendant)] are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.' [Citation.] The rule thus dictates that an injured plaintiff may recover from the tortfeasor money an insurer has paid . . . on his or her behalf." (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 551 [applying collateral source rule to money paid by insurer to medical providers for plaintiff's necessary medical treatment for tortiously caused injuries]; see also *Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347, 349 ["Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded nor is the amount of the damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer"].)

Chimienti contends that none of the policy reasons for applying the collateral source rule apply for legal malpractice insurance, citing *Norton v. Superior Court* (1994) 24 Cal.App.4th 1750 for its discussion of *Helfend v. Southern California Rapid Transit Dist.* (1970) 2 Cal.3d 1 (*Helfend*).  In *Helfend*, our Supreme Court concluded:  "We therefore reaffirm our adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source—such as insurance, pension, continued wages, or disability payments—for which he had actually or constructively . . . paid or in cases in which the collateral source would be recompensed from the tort recovery through subrogation, refund of benefits, or some other arrangement."  (*Id.* at pp. 13–14.)  The *Helfend* court expressly declined to "consider or determine the appropriateness of the rule's application in the myriad of possible situations which we have not discussed or which are not presented by the facts of this case."  (*Id.* at p. 6, fn. 3.)

We reject Chimienti's suggestion that, because it was unclear whether subrogation applied, Wykowski would receive a double recovery which is contrary to the collateral source rule.  As discussed by the *Helfend* court, "[e]ven in cases in which the contract or the law precludes subrogation or refund of benefits, or in situations in which the collateral source waives such subrogation or refund, the rule performs entirely necessary functions in the computation of damages.  For example, the cost of medical care often provides both attorneys and juries in tort cases with an important measure for assessing the plaintiff's general damages.  [Citation.]  To permit the defendant to tell the jury that the plaintiff has been recompensed by a collateral source for his medical costs might irretrievably upset the

21

complex, delicate, and somewhat indefinable calculations which result in the normal jury verdict. [Citations.]" (*Helfend, supra*, 2 Cal.3d at pp. 11–12, fn. omitted.)

We also reject Chimienti's argument that the primary purpose for obtaining malpractice insurance is to protect the attorney from his own negligence, as compared to medical insurance, which covers medical treatment regardless of the source of the injury. The purpose of malpractice insurance is to protect the insured from the risks of malpractice, including attorney fees, regardless of whether the insured actually committed malpractice. (See, e.g., *Johnson v. First State Ins. Co.* (1994) 27 Cal.App.4th 1079, 1081 [professional liability insurance covered claims against insured "by reason of any act, error or omission in professional services rendered"].) Like the plaintiffs in *Helfend, supra*, 2 Cal.3d 1, the insurance benefits Wykowski received were the result of "providence" and foresight to protect himself against the risk of attorney malpractice. (See *id.* at pp. 9–10 ["The collateral source rule as applied here embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. [Fn. omitted.] The tortfeasor should not garner the benefits of his victim's providence"].) Moreover, "payment from the plaintiff's insurance company presents the strongest case for application of the rule. Application of the rule is 'supported by two public policy rationales: favoring the injured party over the culpable tortfeasor and encouraging the public to purchase insurance benefits.' [Citation.]" (*Pacific Gas & Electric Co. v. Superior Court* (1994) 28 Cal.App.4th 174, 179, fn. omitted [discussing law journal's analysis of collateral source rule].) The

trial court therefore did not err when it applied the collateral source rule here.

## IV.    DISPOSITION

The judgment is affirmed.  Plaintiff is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.

We concur:



BAKER, Acting P. J.



MOOR, J.